Jeremy E. Shulman (# 257582)
 jshulman@afrct.com
ANGLIN FLEWELLING & RASMUSSEN LLP
301 N. Lake Avenue, Suite 1100
Pasadena, California 91101-4158
Telephone: (626) 535-1900
Facsimile: (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK B. NOYER,<br><br>            Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.<br><br>            Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL BY DEFENDANT WELLS FARGO BANK, N.A., PURSUANT TO 28 U.S.C. § 1332**<br><br>**[DIVERSITY JURISDICTION]** |

**TO PLAINTIFF AND HIS COUNSEL OF RECORD, THE CLERK OF THE ABOVE-ENTITLED COURT AND THE HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:**

**PLEASE TAKE NOTICE** that defendant WELLS FARGO BANK, N.A. ("Wells Fargo") submits this Notice of Removal based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1441(b) and 1332.

The action is hereby removed to this Court from the state court, as more particularly set forth below.

**1.    THE STATE COURT ACTION.**

On May 21, 2021, Plaintiff Jack B. Noyer ("Plaintiff") commenced an action in the

ANGLIN FLEWELLING & RASMUSSEN LLP

1   Superior Court of the State of California for the County of Kern, Case No. BCV-21-101158 (the

2   "State Court Action").  The defendant in the initial complaint is Wells Fargo Bank, N.A.  A copy

3   of the initial complaint in the State Court Action is attached hereto as <u>Exhibit A</u>.  Attached

4   collectively hereto as <u>Exhibit B</u> are all other documents filed in the State Court Action which are

5   in Wells Fargo's possession.

6   **2.    DIVERSITY OF CITIZENSHIP.**

7       **A.    Complete Diversity.**

8       This Court has jurisdiction of this case under 28 U.S.C. § 1332 because plaintiff's

9   citizenship and that of Wells Fargo Bank, N.A., is entirely diverse and the amount in

10  controversy exceeds $75,000.00.

11          **i.    Plaintiff's Citizenship.**

12      Plaintiff is a California citizen based on domicile.  Plaintiff pleads that he is a resident of

13  Kern County, California.  (Comp. ¶ 1.)  Furthermore, plaintiff was an owner of the property in

14  question, a single-family home located at 500 North Sierra View Street, Ridgecrest, California

15  93555 ("Property").  (Comp. ¶ 2.)  In or around June 2016, plaintiff applied for a loan

16  modification and certified his intention to reside in the Property as his primary residence.

17  (Comp. ¶ 15.)  Upon information and belief, plaintiff resides in California with the intention to

18  remain indefinitely.  "A person's domicile is her permanent home, where she resides with the

19  intention to remain or to which she intends to return."  See e.g., *Kanter v. Warner-Lambert Co.*,

20  265 F.3d 853, 857 (9th Cir. Cal. 2001); *Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal.

21  1991) (residence and property ownership is a factor in domicile for diversity jurisdiction); *State*

22  *Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the

23  equivalent of citizenship, **but the place of residence is prima facie <u>the domicile</u>**.").  (emphasis

24  added).

25          **ii.    Defendant Wells Fargo Bank, N.A. is a Citizen of South Dakota.**

26      Pursuant to 28 U.S.C. § 1348, defendant Wells Fargo Bank, N.A., as a national banking

27  association, is a citizen of the state where it is "located."  In 2006, the United States Supreme

28

ANGLIN FLEWELLING & RASMUSSEN LLP

1    Court, after a thorough examination of the historical versions of § 1348 and the existing case

2    law, held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main

3    office, as set forth in its articles of incorporation, is located." *Wachovia Bank v. Schmidt*, 546

4    U.S. 303, 306-307 (2006).

5    Wells Fargo, with its main office located in Sioux Falls, South Dakota, is a citizen of

6    South Dakota.  Attached to the supporting Declaration of Jeremy E. Shulman ("Shulman Decl.")

7    as Exhibit C are true and correct copies of the FDIC Profile and the Articles of Association for

8    Wells Fargo Bank, National Association, as issued by the Office of the Comptroller of the

9    Currency, Administrator of National Banks, reflecting that Wells Fargo (at Article II, § 1) has its

10   main office in Sioux Falls, South Dakota.  *Rouse, et al. v. Wachovia Mortgage, FSB*, 747 F.3d

11   707, 715 (9th Cir. Mar. 27, 2014) (" under § 1348, a national banking association is a citizen

12   only of the state in which its main office is located." ); *Wells Fargo Bank, N.A. v. WMR e-PIN,*

13   *LLC*, 653 F.3d 702, 710 (8th Cir. Sept. 2, 2011);  *Mireles v. Wells Fargo Bank N.A.*, 845 F.

14   Supp. 2d 1034, 1059-61 (C.D. Cal. 2012); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d

15   1119, 1124 (N.D. Cal. 2010); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028

16   (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota for purposes of diversity.").

17       **iii.**    **Summary of Diversity of Citizenship.**

18   As established by the above facts, complete diversity of citizenship exists under 28

19   U.S.C. § 1332(a), in that plaintiff is a California citizen and Wells Fargo Bank, N.A. is a citizen

20   of South Dakota.

21   **3.**    **AMOUNT IN CONTROVERSY.**

22   Generally, "[t]he amount in controversy is determined from the allegations or prayer of

23   the complaint."  *Schwarzer, Tashima & Wagstaffe, Fed. Civ. Proc. Before Trial* (2009), ¶ 2:450

24   (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), which held that

25   an inability to recover an amount adequate to give the court jurisdiction does not oust the court

26   of jurisdiction).  Moreover, "'[i]n actions seeking declaratory or injunctive relief, it is well

27   established that the amount in controversy is measured by the value of the object of the

28

ANGLIN FLEWELLING & RASMUSSEN LLP

3

CASE NO. _____
NOTICE OF REMOVAL

litigation.' 'If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation.'" *Reyes v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, at *12-*13 (N.D. Cal. June 29, 2010). *See also Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (per curiam) (in an action seeking injunctive relief, the "amount in controversy is measured by the value of the object of the litigation" (citation and internal quotation marks omitted)); *O'Connor v. BankUnited,* 594 Fed. Appx. 329 (9th Cir. 2015).

Plaintiff obtained a residential home loan in the amount of $221,150 from Wells Fargo, which was memorialized by a promissory note and secured by the Property. (Comp. ¶¶ 8-9, Exhs. A, B.) On June 14, 2017, Wells Fargo completed a non-judicial foreclosure. (Comp. ¶ 54.) Plaintiff alleges the foreclosure was improper because he entered into a loan modification on or about November 1, 2016. (Comp. ¶ 59.) Plaintiff claims the foreclosure caused him "to lose substantial equity in the Property." (Comp. ¶ 78.) Plaintiff also seeks punitive damages. (Comp. Prayer ¶ 4.) And plaintiff seeks attorneys' fees and costs under his third claim for relief for Financial Eder Abuse. (Comp. ¶ 80.)

**A.   Lost Equity**

As a starting point, plaintiff claims actual damage of not less than $56,000. (Comp. ¶¶ 62, 78.) In seeking to recover lost equity from the completed foreclosure, plaintiff alleges "the outstanding principal balance on the Property was $209,256.62." (Comp. ¶ 55.) While plaintiff alleges a fair market value of $265,000, he also references an appraised value for the Property of $275,000. (Comp. ¶ 56.) The $275,000 value comes from an appraisal by the Department of Veterans Affairs in connection with plaintiff's attempted sale of the Property to James Winston. (Shulman Decl., Exh. D.) On or about, May 2, 2017, plaintiff sent a fax to Wells Fargo requesting a foreclosure postponement, stating in part that the "VA appraised House @ $275,000." (Shulman Decl., Exh. E.) With a value of $275,000 against an alleged balance of $209,256.62, the plaintiff's alleged loss equity figure is actually $65,743.38. Because plaintiff's

ANGLIN FLEWELLING & RASMUSSEN LLP

CASE NO. _____
NOTICE OF REMOVAL

complaint specifically references these values, he has placed them in issue for purposes of the amount in controversy.[1]

### B.    Punitive Damages

Having already identified an amount in controversy of at least $65,743.38, this Court's diversity jurisdiction only requires an additional $9,257.62 to exceed the $75,000 threshold. Plaintiff seeks punitive damages that "count toward determining the amount in controversy in a removed action." *Guerard v. CAN Financial Corp.*, 2009 WL 10710608, at *4 (N. D. Cal. July 31, 2009). As noted in *Guerard*, "in California, a 3 to 1 ratio of punitive damages to actual damages is constitutional." *Id*. Here, even a ratio of 1 to 1 establishes an amount in controversy over $75,000 as punitive damages of at least $9,257.62 is all that is needed.[2]

### C.    Attorneys' Fees

Having already established an amount above $75,000, the Court need not consider plaintiff's request for attorneys' fees. With that said, attorneys' fees may be used in calculating the amount in controversy if recoverable by statute or contract. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998); *Gonzalez v. Comenity Bank*, 2019 WL 5304925, at *9 (E.D. Cal. Oct. 21, 2019, Ishii, J.). Plaintiff's claim for financial elder abuse includes a request for attorneys' fees, which "the court shall award" to a prevailing plaintiff under Cal. Welf. & Inst. Code § 15657.5(a). *See e.g., In re Conservatorship of Pers. & Est. of Gonzalez*, 2008 WL 3877688, at *2 (Cal. Ct. App. Aug. 22, 2008) (awarding $50,000 in attorneys' fees for financial elder abuse claim alleging the improper sale of real property)[3]; *In re Bishop*, 2018 WL 1069145, at *21, n. 52 (Bankr. C.D. Cal. Feb. 22, 2018) ("The Superior Court ordered Defendant to pay

---

[1] These figures are discussed merely for purposes of identifying what plaintiff has placed in issue in this suit. Wells Fargo reserves the right to challenge both the fair market value of the Property and the amount due and owing at the time of foreclosure.

[2] Wells Fargo reserves the right to argue all applicable defenses to the recovery of punitive damages.

[3] This decision is not cited for any precedential value, but merely for the existence of the fee award.

ANGLIN FLEWELLING & RASMUSSEN LLP

attorneys' fees of $308,930.00 . . . in order to redress Defendant's harm to her for financial elder abuse.").

There is plainly at least $25,000 at issue in attorneys' fees.  Thus, even were the Court to disregard punitive damages, $25,000 plus plaintiff's request for at least $56,000 in damages meets the jurisdictional threshold.

Plaintiff's counsel earned a B.A. in Political Science in 2005 from Howard University and a J.D. in 2008 from The Ohio State University, Moritz College of Law.  (Shulman Decl., ¶ 6.)  Mr. Redman worked for six years for the Kings County District Attorney's Office in Brooklyn, New York.  (*Id.*)  Mr. Redman then worked for Morgan Stanley in the areas of "financial threats involving money laundering, terrorist finance, elder financial exploitation, fraud, scams, theft and insider trading."  (*Id.*)  Mr. Redman was admitted to the New York State Bar in 2009 and the California Bar in 2020.  (*Id.*)

For an attorney with more than 10 years of experience, a reasonable rate for representation in the subject geographic area is $250 per hour.  In *Silvester v. Harris*, 2014 WL 7239371, at *5 (E.D. Cal. Dec. 17, 2014, Ishii, J.), this Court approved $285 to $350 an hour for 10-11-year attorneys.  In *Tenorio v. Gallardo*, 2019 WL 3842892, at *4 (E.D. Cal. Aug. 15, 2019, Drozd, J.), this Court approved $300 an hour for an attorney with around 10 years' experience.  For wage and hour litigation, this Court has found a range of $250 to $350 an hour for attorneys with less than 15 years' experience.  *Id*. at *4.

The prosecution of this action to a conclusion has involved and will involve time totaling at least 100 hours of work.  (Shulman Decl., ¶ 7(a)-(h).)  That time is likely to include:

        a.     10 hours: initial meetings with plaintiff, review and analysis of the underlying dispute, and draft of the initial complaint;

        b.     7 hours: research, draft and oppose motion to dismiss complaint;

        c.     3 hours: draft first amended complaint;

        d.     5 hours: research, draft and oppose motion to dismiss first amended complaint;

ANGLIN FLEWELLING & RASMUSSEN LLP

CASE NO. _____

NOTICE OF REMOVAL

1         e.     10 hours: respond to written discovery pounded by Wells Fargo and to

2    propound written discovery on Wells Fargo including any discovery disputes that may arise;

3         f.     20 hours: depositions of at least plaintiff and a Wells Fargo corporate

4    witness, including 3 hours to prepare for each deposition and 7 hours to take or defend each

5    deposition;

6         g.     15 hours: oppose Wells Fargo's motion for summary judgment;

7         h.     30 hours: at least four days to prepare and attend trial in this case

8    (assuming 7.5 hour days).  (Shulman Decl., ¶ 7(a)-(h).)

9         In sum, between plaintiff's claim for lost equity ($56,000 - $65,743.38), punitive

10   damages, and attorneys' fees ($25,000), the amount in controversy readily exceeds $75,000 and

11   diversity jurisdiction is proper.

12   **4.**     **TIMELINESS.**

13        This Notice is timely, pursuant to 28 U.S.C. § 1446(b), because Wells Fargo Bank, N.A.

14   received service of process through its registered agent (*i.e.*, the summons and complaint in the

15   State Court Action) on May 27, 2021.  *Destfino v. Reiswig, et al.,* 630 F.3d 952, 956 (9th Cir.

16   Cal. 2011) ("we hold that each defendant is entitled to thirty days to exercise his removal rights

17   after being served").  With the 30th day following service falling on Saturday June 26, 2021, this

18   Removal is timely filed by the next Court day on June 28, 2021.  As no doe defendants have

19   been identified or served at this time, no joinder of unserved defendants is required to perfect

20   removal of the State Court Action.  *Salveson v. Western States Bankcard Ass'n.,* 730 F.2d 1423,

21   1429 (9th Cir. 1984).

22   **5.**     **INTRADISTRICT ASSIGNMENT.**

23        This case is being removed to the Fresno Division of this Court because the existing

24   State Court Action is pending in Kern County.  E. D. Local Rule 120(d).

25

26   / / /

27

28

ANGLIN FLEWELLING & RASMUSSEN LLP

**6.    OTHER PERTINENT INFORMATION.**

A.    Pursuant to 28 U.S.C. § 1446(a), defendant Wells Fargo files this Notice in the District Court of the United States for the district within which the State Court Action is pending.

B.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and its attachments will promptly be served on plaintiff in the State Court Action and notice thereof will be filed with the clerk of the Kern County Superior Court.

**WHEREFORE**, Defendant Wells Fargo hereby removes Kern County Superior Court Case No. BCV-21-101158 to the United States District Court for the Eastern District of California.

Respectfully submitted,

Dated:  June 28, 2021                          ANGLIN FLEWELLING & RASMUSSEN LLP


By:  _____/s/ Jeremy E. Shulman_____
Jeremy E. Shulman
Attorneys for Defendant
WELLS FARGO BANK, N.A.

ANGLIN FLEWELLING & RASMUSSEN LLP

# EXHIBIT A

1  Mr. Courtney W. Redman, Esq. (State Bar No. 331562)
   The Law Office of Courtney W. Redman, Esq.
2  1055 W. 7th Street, 33rd Fl.
   Los Angeles, CA 90017
3  Telephone: (213) 863-4747
   courtney@cwredmanlaw.com
4

ELECTRONICALLY FILED
5/21/2021 8:00 AM
Kern County Superior Court
By Sophia Munoz Alvarez, Deputy

5              THE SUPERIOR COURT OF CALIFORNIA

6                     COUNTY OF KERN

7

8  JACK B. NOYER,                     Case No.:  BCV-21-101158

9        Plaintiff,

10 vs.                                 UNLIMITED CIVIL DEMAND OVER $25,000
                                       COMPLAINT FOR:
11 WELLS FARGO BANK, N.A.,             (1)    BREACH OF CONTRACT
                                       (2)    VIOLATION OF BUSINESS &
12        Defendants                          PROFESSIONS CODE §17200 ET SEQ.
                                       (3)    VIOLATION OF WELFARE &
13                                            INSTITUTIONS CODE § 15610.30
                                       (4)    DAMAGES
14
                                       DEMAND FOR JURY TRIAL
15
16       Plaintiff, Jack B. Noyer, alleges the following on information and belief:

17                          **THE PARTIES**

18       1.  Plaintiff is an adult, seventy-five years of age, who is now, and at all times

19 relevant to this action, a resident of the County of Kern, State of California.

20       2.  At all times relevant to this action, Plaintiff was an owner of certain real property

21
22 commonly known as 500 N SIERRA VIEW ST, RIDGECREST, KERN COUNTY,

23 CALIFORNIA, 93555 ("the Property").  Which is legally described as follows:  LOT 1 OF

24 TRACT 2884, IN THE CITY OF RIDGECREST, COUNTY OF KERN, STATE OF CALIFORNIA,

25 AS PER MAP RECORDED NOVEMBER 30, 1965 IN BOOK 14, PAGE 168 OF MAPS, IN

26

27 UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2)
   VIOLATION OF BUSINESS &        PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF
28 WELFARE &        INSTITUTIONS CODE § 15610.30(4)        DAMAGESDEMAND FOR JURY TRIAL
   - 1

1  THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. Accessor's parcel number

2  067-221-12.

3
   3. Plaintiff is informed and believes, and thereon alleges that Defendant, Wells
4
   Fargo Bank, N.A. is a federally chartered national banking association, doing business in the state
5
6  of California and is the alleged beneficiary of Plaintiff's loan.

7  **JURISDICTION AND VENUE**

8
   4. This Court has jurisdiction over this action pursuant to California Code of Civil
9
   Procedure § 410.10.
10
11
   5. The transactions and events that are the subject matter of this Complaint all
12  occurred within the County of Kern, State of California.

13  **FACTUAL ALLEGATIONS**

14
   6. Plaintiff states that his date of birth is October 16, 1945.
15
   7. On or about May 26, 1992, Plaintiff and Diane Noyer purchased the property as
16
17  husband and wife.

18
   8. On or about April 1, 2013, Plaintiff and Diane Noyer, executed a series of
19
   documents, including a Promissory Note ("Note") in the amount of $221,150 to refinance the loan
20
   on their property as their primary residence. A true and correct copy of the Note is attached hereto
21
22  as "**Exhibit A.**"

23
   9. On or about April 1, 2013, Plaintiff and Diane Noyer also executed a Deed of
24  Trust ("DOT") in favor of Defendant. A true and correct copy of the DOT is attached hereto as

25  "**Exhibit B.**"

26

27  UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)     BREACH OF CONTRACT(2)
    VIOLATION OF BUSINESS &     PROFESSIONS CODE §17200 ET SEQ.(3)     VIOLATION OF
28  WELFARE &     INSTITUTIONS CODE § 15610.30(4)     DAMAGESDEMAND FOR JURY TRIAL
    - 2

10. Plaintiff alleges that the Note was guaranteed by the Veterans Administration. A true and correct copy of the VA guarantee is attached to the DOT evidenced in **Exhibit B**.

11. Plaintiff alleges that due to economic hardship, he and Diane Noyer fell behind on the mortgage payment.

12. Plaintiff alleges that on or about June 27, 2016, Defendant recorded a Substitution of Trustee ("SOT"), naming Barrett Daffin Frappier Treder & Weiss, LLP ("Barrett Daffin") the trustee under Plaintiff's loan, in Kern County, California Recorder's Office, Instrument Number 216083794. A true and correct copy of the SOT is attached hereto as **Exhibit "C."**

13. Plaintiff alleges that on or about June 29, 2016, Barrett Daffin, on behalf of Defendant, recorded a Notice of Default (herein referred to as the "NOD") against the Property in the Kern County, California Recorder's Office, Instrument No. 216085375. A true and correct copy of the NOD is attached hereto as **Exhibit "D."**

14. Plaintiff alleges that he contacted Defendant to discuss foreclosure prevention options.

15. Plaintiff alleges that between June 2016 and September 2016, Plaintiff and Diane Noyer submitted a loan modification package to Defendant.

16. Plaintiff alleges that at the time Plaintiff submitted the loan modification package, Jacob Esquivel, a representative of Defendant, was assigned as Plaintiff's single point of contact.

17. On or about September 21, 2016, Defendant contacted Plaintiff and Diane Noyer via a letter and acknowledged receipt of the loan modification package. A true and correct

UNLIMITED CIVIL DEMAND OVER $25,000 COMPLAINT FOR: (1)     BREACH OF CONTRACT (2) VIOLATION OF BUSINESS &          PROFESSIONS CODE §17200 ET SEQ.(3)     VIOLATION OF WELFARE &     INSTITUTIONS CODE § 15610.30 (4)     DAMAGES DEMAND FOR JURY TRIAL - 3

1  copy of the letter acknowledging Defendant's receipt of the loan modification package is attached
2  hereto as **Exhibit "E."**
3
4       18. Thereafter, on or about October 3, 2016, Defendant approved Plaintiff and Mrs.
5  Noyer's loan modification package and offered a loan modification agreement/deed of trust
6  ("Modification") in which Defendant agreed to modify the principal balance of the Note to the
7  new principal balance of $219,309.88. A true and correct copy of the Modification is attached
8  hereto as **Exhibit "F."**
9
10      19. Plaintiff further alleges that the new principal balance referenced in the
11  Modification was inclusive of capitalization of amounts and arrearages that would have been past
12  due as of the modification effective date of November 1, 2016.
13      20. Plaintiff further alleges that pursuant to the Modification the amounts and
14  arrearages included unpaid and deferred interest and fees, escrow advances, and other costs.
15      21. Plaintiff alleges that pursuant to the Modification, because unpaid interest was
16  now included in the new principal balance, interest accrued on the unpaid interest amount which
17  would not occur without the Modification.
18
19      22. Plaintiff alleges that pursuant to the Modification, the current contractual due
20  date of February 1, 2016 was changed to December 1, 2016, making December 1, 2016 the first
21  modified contractual due date.
22
23      23. Plaintiff further alleges that pursuant to the Modification, Defendant agreed to
24  waive all unpaid late charges.
25      24. On or about October 8, 2016, Plaintiff and Diane Noyer executed the
26  Modification.
27  UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)      BREACH OF CONTRACT(2)
    VIOLATION OF BUSINESS &       PROFESSIONS CODE §17200 ET SEQ.(3)      VIOLATION OF
28  WELFARE &       INSTITUTIONS CODE § 15610.30(4)      DAMAGESDEMAND FOR JURY TRIAL
    - 4

1    25. Plaintiff alleges that the Modification was notarized and returned to Defendant

2    in accordance with Defendant's terms.

3    26. Plaintiff alleges that he tendered the initial payment required in the

4

5    Modification by executing the Preferred Payment Plan Authorization Form dated October 8, 2016,

6    which authorized Defendant to withdrawal the mortgage payment from his checking account on

7    the monthly due date and by returning it to Defendant with the executed Modification. A true and

8    correct copy of the Preferred Payment Plan Authorization Form is attached hereto as **Exhibit "G."**

9    27. Plaintiff alleges that Defendant received the executed Modification on October

10

11   13, 2016.

12   28. Plaintiff alleges that, in accordance with the terms of the Modification, upon

13   Defendant's receipt of the Modification, the Modification became effective on November 1, 2016.

14   29. Plaintiff alleges that the terms of the Modification did not require Defendant to

15   counter-sign the Modification for it to become effective.

16

17   30. Plaintiff alleges that the Modification did not require Plaintiff to make the

18   initial payment under the Modification until December 1, 2016.

19   31. Plaintiff alleges that in accordance with the terms of the Modification,

20   Defendant was required to attempt to suspend or cancel foreclosure proceedings.

21   32. On or about November 3, 2016, Diane Noyer passed away resulting in a

22

23   substantial change of circumstances for Plaintiff.

24   33. Plaintiff alleges that he contacted Defendant to inform Defendant of this

25   substantial change of circumstances and to request a new modification agreement.

26

27   UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)   BREACH OF CONTRACT(2)
     VIOLATION OF BUSINESS &         PROFESSIONS CODE §17200 ET SEQ.(3)   VIOLATION OF
28   WELFARE &    INSTITUTIONS CODE § 15610.30(4)   DAMAGESDEMAND FOR JURY TRIAL
     - 5

34. Plaintiff alleges that at the time that Plaintiff contacted Defendant concerning the death of Mrs. Noyer, a representative of Defendant informed Plaintiff that the Modification had not been received.

35. Plaintiff alleges that Plaintiff informed Defendant, through Defendant's representative, that Plaintiff had executed the Modification with his then living wife on or about October 8, 2016 and that it was returned to Defendant in accordance with Defendant's instructions.

36. Plaintiff alleges that as a result of Plaintiff's indication that he and his then living wife had properly executed the modification and returned it to Defendant, the representative informed Plaintiff that he would "look into it" and get back to Plaintiff leading Plaintiff to believe that an investigation would be conducted regarding the properly executed modification agreement.

37. Plaintiff alleges that on February 3, 2017, Plaintiff was contacted by Defendant and informed that a Debbie Sanchez was his new single point of contact for his loan modification.

38. Plaintiff alleges that on or about February 10, 2017, a Wells Fargo representative sent Plaintiff a letter and informed him that he had been removed from the loan modification review process due to Defendant not receiving the signed Modification documents. A true and correct copy of the relevant portions of the letter are hereto attached as **Exhibit "H."**

39. Plaintiff alleges that he again contacted Defendant and inquired about his options to maintain the property.

40. Plaintiff alleges that on or about February 13, 2017, Defendant sent Plaintiff a letter and informed him that his options to avoid foreclosure sale were either a Short Sale or a Deed in lieu of foreclosure. A true and correct copy of the relevant portions of the letter are hereto attached as **Exhibit "I."**

UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)   BREACH OF CONTRACT(2) VIOLATION OF BUSINESS &   PROFESSIONS CODE §17200 ET SEQ.(3)   VIOLATION OF WELFARE &   INSTITUTIONS CODE § 15610.30(4)   DAMAGESDEMAND FOR JURY TRIAL
- 6

1  41. Plaintiff alleges that from on or about September 2016 to on or about May 12,

2  2017, Plaintiff spoke to or received communication from seven different points of contact

3  regarding the Modification.

4

5  42. Plaintiff alleges that the seven points of contact included Jacob Esquivel,

6  Debbie Sanchez, Leesa Whit-Potter, James Michael Green, Rosie Gregory, Samantha Faux, and

7  Tonja O'Donnell.

8

9  43. Plaintiff alleges that the seven points of contact named above were not

10  knowledgeable about Plaintiff's account being that none of them were aware of the fact that

11  Defendant had in fact received the executed Modification on October 13, 2016 and subsequent to

12  Plaintiff informing Defendant that his wife, Diane Noyer had died on November 3, 2016, the points

13  of contact continued to address written communication regarding Plaintiff's account to both

14  Plaintiff and his wife.

15

16  44. Plaintiff alleges that on or about February 22, 2017, Barrett Daffin, on behalf

17  of Defendant, recorded a Notice of Trustee's Sale ("NTS") against the Property in the Kern County,

18  California Recorder's Office, Instrument No. 217023294. A true and correct copy of the NTS is

19  attached hereto as Exhibit "J."

20

21  45. Plaintiff alleges that on or about February 28, 2017, Plaintiff received a letter

22  from Defendant stating that Defendant was not moving forward with a review of the mortgage for

23  assistance due to "(his) mortgage history, the recent information you provided us, and the current

24  circumstances surrounding your mortgage." A true and correct copy of the relevant portions of

25  the letter are attached hereto as Exhibit "K."

26

27  UNLIMITED CIVIL DEMAND OVER $25,000 COMPLAINT FOR:(1)   BREACH OF CONTRACT(2)   VIOLATION OF

28  PROFESSIONS CODE §17200 ET SEQ.(3)   WELFARE &   INSTITUTIONS CODE § 15610.30(4)   DAMAGES DEMAND FOR JURY TRIAL

- 7 -

46. Plaintiff alleges that as a result of a request by a Veterans Affairs representative, Defendant postponed the foreclosure sale which Defendant granted so that Plaintiff could attempt to sale the Property in a traditional sale.

47. Plaintiff alleges that his attempt to sell the Property in a traditional sale was an attempt to mitigate expected loss to be caused by Defendant's breach of the Modification agreement.

48. Plaintiff alleges that on March 23, 2017, he entered into a Purchase and Escrow agreement to sale the Property.

49. Plaintiff alleges that on May 2, 2017, he contacted Defendant and requested a second postponement of the foreclosure sale.

50. Plaintiff alleges that on May 3, 2017 he contacted Defendant and requested a Payoff.

51. Plaintiff alleges that on May 12, 2017, Defendant granted postponement of foreclosure sale until June 14, 2017 and a payoff that was good through June 2, 2017.

52. Plaintiff alleges that on June 6, 2017 he was informed that the buyer backed out of the sale.

53. Plaintiff also alleges that on June 7, 2017 he contacted Defendant and requested postponement of the foreclosure sale and that on that same date Defendant denied postponement.

54. Plaintiff alleges that on June 14, 2017, Defendant caused a foreclosure sale to be conducted on the Property resulting in damages to Plaintiff.

55. Plaintiff alleges that he received a federal tax form 1099-A ("1099-A") dated April 21, 2018 which indicates that at the time of the foreclosure sale the outstanding principal

UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2) VIOLATION OF BUSINESS &    PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF WELFARE &    INSTITUTIONS CODE § 15610.30(4)    DAMAGESDEMAND FOR JURY TRIAL - 8

1   balance on the Property was $209,256.62 and that the fair market value of the Property was

2   $265,000.00. A true and correct copy of the 1099-A is attached hereto as **Exhibit "L."**

3
4       56. Plaintiff is informed and believes and thereon alleges that the Department of

5   Veterans Affairs caused an appraisal to be conducted on the Property and that the appraised value

6   of the Property was $275,000.

7       57. Plaintiff is informed and believes and thereon alleges based on a letter provided

8   to Plaintiff as a result of an investigation that was conducted at Plaintiff's request, that Defendant

9   has made false representations that caused the Department of Veterans Affairs to believe that

10  Plaintiff's home was sold in foreclosure because Plaintiff's wife died prior to proper execution of

11
12  the Modification agreement, and that Defendant offered Plaintiff a new modification that Plaintiff

13  rejected. A true and correct copy of the letter is attached hereto as **Exhibit "M."**

14
15              **FIRST CAUSE OF ACTION:**
16               **BREACH OF CONTRACT**
                  **(AS AGAINST DEFENDANT)**
17      58. Plaintiff restates, realleges and incorporates the allegations contained in the

18  preceding paragraphs of this complaint as though fully set forth herein.

19      59. On or about November 1, 2016, Plaintiff and Defendant entered into a

20  Modification as described herein and attached as **Exhibit F.**

21      60. Defendant breached and repudiated the Modification in numerous material
22
23  respects, including without limitation, the following:

24          a. by repudiating the contract and refusing to accept the first payment that

25  was tendered by Plaintiff.

26

27  UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2)
    VIOLATION OF BUSINESS &          PROFESSIONS CODE §17200 ET SEQ.(3)      VIOLATION OF
28  WELFARE &       INSTITUTIONS CODE § 15610.30(4)        DAMAGESDEMAND FOR JURY TRIAL
    - 9

1           b.  by failing and refusing to honor the provision in the Modification in

2   which Defendant agreed to attempt to suspend or cancel the foreclosure action upon receipt

3   of the first payment.

4

5           c.  by causing a foreclosure sale to be executed on the Property June 14,

6   2017.

7          61.  Plaintiff has fully performed all of its covenants and obligations under the

8   Modification, except those whose performance has been waived or legally excused.

9          62.  As a direct and proximate result of the Defendant's breach as described herein,

10   Plaintiff has been damaged in the amount to conform to proof at trial, but not less than $56,000,

11   plus interest as allowed by law, and attorneys' fees and costs as provided by law.

12

13

14                    **SECOND CAUSE OF ACTION:**

15     **VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200**
                       **(AS AGAINST DEFENDANT)**

16

17          63.  Plaintiff restates, realleges and incorporates the allegations contained in the

18   preceding paragraphs of this complaint as though fully set forth herein.

19          64.  Plaintiff is informed and believes and thereon alleges that Defendant has a

20   business practice and habit of luring distressed homeowners into submitting a loan modification

21   application only to deny their request without proper review or justification.

22

23          65.  Plaintiff alleges that Defendant engaged in fraudulent and unfair business

24   practices by offering Plaintiff a loan modification agreement only to falsely deny receipt of

25   Plaintiff's executed loan modification documents when in fact, Defendant had received the

26   modification documents.

27   UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2)
   VIOLATION OF BUSINESS &amp;      PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF

28   WELFARE &amp;     INSTITUTIONS CODE § 15610.30(4)     DAMAGESDEMAND FOR JURY TRIAL
   - 10

66. Plaintiff further alleges that Defendant engaged in fraudulent and unfair business practices by falsely leading Plaintiff to believe that Defendant was investigating Plaintiff's claim that he had returned the executed modification agreement although Defendant had already received the executed agreement and had no intentions of conducting the investigation.

67. Plaintiff further alleges that Defendant's fraudulent and unfair business practices are evidenced by the fact that Defendant gave two conflicting reasons why Plaintiff was no longer being reviewed for modification.

68. Plaintiff alleges that Defendant's use of seven points of contact while communicating with Plaintiff regarding the Modification process was part and parcel to Defendant's fraudulent and unfair business practice of leading Plaintiff to believe that his claim was being investigated and that Defendant was reviewing Plaintiff's mortgage for loss mitigation options when in fact Defendant was not.

69. Plaintiff alleges that Defendant's false representations to the Department of Veterans Affairs that Plaintiff's home was sold in foreclosure because Plaintiff's wife died prior to execution, and that Defendant offered Plaintiff a new modification that Plaintiff rejected.

70. Plaintiff alleges that Defendant's representation to the Department of Veterans Affairs was an attempt to cover up Defendant's fraudulent acts regarding the receipt of and breach of the Modification agreement.

71. The acts of Defendant constitute unfair business practices and/or acts as defined in California Business and Professions Code §§ 17200 and 17500, were in violation of established California public policies to promote and preserve home ownership and to prevent foreclosures. (Civ. Code §§ 1695(b), 2923.4, 2923.6 and 3412).

UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2) VIOLATION OF BUSINESS &    PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF WELFARE &    INSTITUTIONS CODE § 15610.30(4)    DAMAGESDEMAND FOR JURY TRIAL - 11

72.    Lastly, Plaintiff alleges that the Defendant's acts were oppressive and substantially injurious to consumers such as Plaintiff, in violation of California law and public policy, as these acts were misleading and injurious to the Plaintiff.

73. As a direct and proximate cause of the acts of Defendant, Plaintiff has suffered damages in the amount that exceeds the jurisdictional limits of this Court. Plaintiff has also suffered consequential damages in an amount to be fully determined at time of trial, and is entitled to all statutory damages as provided in the above noted Code section, including attorney's fees and costs.

## THIRD CAUSE OF ACTION:
## VIOLATION OF WELFARE & INSTITUTIONS CODE § 15610.30
## (AS AGAINST DEFENDANT)

74. Plaintiff restates, realleges and incorporates the allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

75. California Welfare & Institutions Code § 15610.30 states in pertinent part:

"(a) 'Financial abuse' of an elder or dependent adult

occurs when a person or entity does any of the

following:

(1) Takes, secretes, appropriates,

obtains, or retains real or personal

property of an elder or dependent

adult for wrongful use or with

intent to defraud or both...

UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)     BREACH OF CONTRACT(2)
VIOLATION OF BUSINESS &         PROFESSIONS CODE §17200 ET SEQ.(3)     VIOLATION OF
WELFARE &     INSTITUTIONS CODE § 15610.30(4)         DAMAGESDEMAND FOR JURY TRIAL
- 12

(b) A person or entity shall be deemed to have taken,

secreted, appropriated, obtained or retained property

for a wrongful use if, among other things, the person

or entity takes, secreted, appropriates, obtains, or

retains the property and the person or entity knew or

should have known that this conduct is likely to be

harmful to the elder or dependent adult." (CA Welf

& Inst Code § 15610.30 (2014).

76. Plaintiff alleges that at the time of the foreclosure sale Plaintiff was an elder adult under CA Welf & Inst Code § 15610.27 because he was seventy-one years old.

77. Plaintiff further alleges that wrongfully obtained Plaintiff's property when it breached the Modification agreement and sold the property in the subsequent foreclosure sale.

78. Plaintiff further alleges that Defendant obtained the Property for wrongful use in that Plaintiff knew or should have known that breach of contract and the subsequent foreclosure sale would cause Plaintiff to lose substantial equity in the Property in the amount to conform to proof at trial, but not less than $56,000 and to incur costs associated with finding a new residence and moving.

79. Plaintiff further alleges that Defendant knew or should have known that breach of contract and subsequent foreclosure sale would harm Plaintiff because Defendant conducted a financial overview of Plaintiff prior offering Plaintiff the modification agreement and because Defendant was aware that Plaintiff's financial position was materially changed once his wife died.

UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2)
VIOLATION OF BUSINESS &        PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF
WELFARE &        INSTITUTIONS CODE § 15610.30(4)    DAMAGESDEMAND FOR JURY TRIAL
- 13

1       80. As a direct and proximate cause of the acts of Defendant, Plaintiff has suffered

2 damages in the amount that exceeds the jurisdictional limits of this Court. Plaintiff has also

3 suffered consequential damages in an amount to be fully determined at time of trial, and is entitled

4 to all statutory damages as provided in the above noted Code section, including attorney's fees and

5 costs.

6

7                   **JURY DEMAND**

8       81. Plaintiff requests a jury for all triable issues.

9                **PRAYER FOR RELIEF**

10

11       **WHEREFORE**, Plaintiff will ask for the following for each Cause of Action to be

12 awarded:

13       1.  For Compensatory Damages;

14       2.  For Special Damages;

15       3.  For General Damages;

16

17       4.  For Punitive Damages as allowed by law;

18       5.  For Restitution as allowed by law;

19       6.  For Attorney's Fees and Costs of this action;

20       7.  For any prejudgement or other interest according to law; and

21       8.  Any other and further relief that the Court considers just and Proper.

22

23

24

25       Dated this 20th day of May, 2021.

26

27 UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2)
VIOLATION OF BUSINESS &amp;       PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF
28 WELFARE &amp;      INSTITUTIONS CODE § 15610.30(4)    DAMAGESDEMAND FOR JURY TRIAL
- 14



Mr. Courtney W. Redman
Attorney for Mr. Jack B. Noyer, Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNLIMITED CIVIL DEMAND OVER $25,000COMPLAINT FOR:(1)    BREACH OF CONTRACT(2)
VIOLATION OF BUSINESS &    PROFESSIONS CODE §17200 ET SEQ.(3)    VIOLATION OF
WELFARE &    INSTITUTIONS CODE § 15610.30(4)    DAMAGESDEMAND FOR JURY TRIAL
- 15

# EXHIBIT A

r



# NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

**APRIL 01, 2013**
[Date]                                    [City]                                    [State]

**500 N SIERRA VIEW ST, RIDGECREST, CA 93555**

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****221,150.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WELLS FARGO BANK, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.375** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **FIRST** day of each month beginning on **JUNE 01, 2013**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **MAY 01, 2043**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758** or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **********977.70

### 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - California and Veterans Affairs
NMFL 4308 (CAVN) Rev 2/2009

Form 3200 1/01
Amended 8/00
-6G(CA) (0007)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    Initials _____

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000** % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - California and Veterans Affairs

Form 3200 1/01

-5G(CA) (0607)    Page 2 of 3

EXHIBIT A TO NOTICE OF REMOVAL
Page 26

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge      ☐ Other [Specify]      ☐ Other [Specify]

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

TRANSFER OF THE PROPERTY: If all or any part of the Property or any interest in the Property is sold or transferred, this loan may be declared immediately due and payable upon transfer ("Assumption") of the property securing such loan to any transferee ("Assumer"), unless the acceptability of the Assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
JACK B NOTER    -Borrower      DIANE NOTER    -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - California and Veterans Affairs
-6G(CA) (0007)      Page 3 of 3      Form 3200 1/01

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____

SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT

0016

# EXHIBIT B

James W. Fitch, Assessor-Recorder
Kern County Official Records

SR
4/24/2013
08:35 AM

Recorded Electronically by:
303 First American Title Cleveland

Recording Requested By:
WELLS FARGO BANK, N.A.

WHEN RECORDED, RETURN TO:
FIRST AMERICAN MORTGAGE SERVICES
1100 SUPERIOR AVENUE, SUITE 200
CLEVELAND, OHIO 44114
NATIONAL RECORDING

Prepared By:
WELLS FARGO BANK, N.A.

DOC#: 000213056356

| Stat Types: | 1 | Pages: | 19 |
|---|---|---|---|
| | FEES | | 71.00 |
| | TAXES | | .00 |
| | OTHER | | .00 |
| | PAID | | 71.00 |

2701 WELLS FARGO WAY,,
MINNEAPOLIS, MN 554678000

7727883N     [Space Above This Line For Recording Data]     46821158

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 01, 2013 together with all Riders to this document.

(B) "Borrower" is JACK B NOYER AND DIANE NOYER, HUSBAND AND WIFE

Borrower's address is 500 N SIERRA VIEW ST
RIDGECREST , CA 93555 . Borrower is the trustor under this Security Instrument.

(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005  1/01
Wolters Kluwer Financial Services
VMP ®-6(CA) (0711)

NMFL 3005 (CACD)  Rev 3/2009
Page 1 of 15

Lender's address is 101 NORTH PHILLIPS AVENUE, SIOUX FALLS, SD 57104

Lender is the beneficiary under this Security Instrument.
(D) "Trustee"is FIDELITY NATIONAL TITLE INS CO
1920 MAIN STREET, SUITE 120, IRVINE, CA 92614
(E) "Note" means the promissory note signed by Borrower and dated APRIL 01, 2013
The Note states that Borrower owes Lender TWO HUNDRED TWENTY ONE THOUSAND ONE HUNDRED
FIFTY AND 00/100                                                    Dollars
(U.S. $ *******221,150.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than MAY 01, 2043
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01
VMP ®-6(CA) (0711)                               Page 2 of 15 .        Initials

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                        of KERN                                        :

[Type of Recording Jurisdiction]                                [Name of Recording Jurisdiction]
PLEASE ATTACH LEGAL DESCRIPTION /bm/

## SEE EXHIBIT A

TAX STATEMENTS SHOULD BE SENT TO:    WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758

Parcel ID Number: 067-221-12-00-3                    which currently has the address of
500 N SIERRA VIEW ST                                                            [Street]
RIDGECREST                                        [City], California  93555        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01
VMP ®-6(CA) (0711)                                        Page 3 of 15        Initials

EXHIBIT A TO NOTICE OF REMOVAL
Page 32

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005   1/01
VMP ®-6(CA) (0711)                    Page 4 of 15      Initials

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

EXHIBIT A TO NOTICE OF REMOVAL
Page 34

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP ®-6(CA) (0711)                     Page 7 of 15                   Initials _____    Form 3005  1/01

EXHIBIT A TO NOTICE OF REMOVAL
Page 36

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
VMP ®-6(CA) (0711)                                            Page 8 of 15      Initials

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

EXHIBIT A TO NOTICE OF REMOVAL
Page 38

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

**EXHIBIT A TO NOTICE OF REMOVAL**
**Page 40**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005    1/01
VMP ®-6(CA) (0711)                                        Page 12 of 15        Initials:

EXHIBIT A TO NOTICE OF REMOVAL
Page 41

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

EXHIBIT A TO NOTICE OF REMOVAL
Page 42

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



_____          _____ (Seal)
                                    JACK B NOYER          -Borrower

_____          _____ (Seal)
                                    DIANE NOYER           -Borrower

_____ (Seal)   _____ (Seal)
                 -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                 -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                 -Borrower                                -Borrower

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005   1/01
VMP ®-6(CA) (0711)                         Page 14 of 15

EXHIBIT A TO NOTICE OF REMOVAL
Page 43

State of California
County of Kern

On April 1, 2013                    before me, Wendy Madsen, Notary Public
                                              , personally appeared
JACK B NOYER AND DIANE NOYER

                                                                              , who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF
PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

                                              Wen Meels                    (Seal)
                                              Wendy Madsen

**WENDY MADSEN**
COMM. #1893110
Notary Public · California
San Bernardino County
My Comm. Expires July 16, 2014

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005   1/01
VMP ®-8(CA) (0710)                                Page 15 of 15

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **1ST** day of **APRIL, 2013** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **WELLS FARGO BANK, N.A.**

(herein "Lender") and covering the Property described in the Security Instrument and located at **500 N SIERRA VIEW ST, RIDGECREST, CALIFORNIA 93555**

[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

-538R (0310)          03/03
Page 1 of 3          Initials
VMP Mortgage Solutions (800)521-7291

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to       one-half of one percent       (  0.5   %) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

-538R (0310)                          Page 2 of 3                    Initials

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

JACK R NOYER                              -Borrower          DIANE NOYER                              -Borrower

_____                 -Borrower          _____               -Borrower

_____                 -Borrower          _____               -Borrower

_____                 -Borrower          _____               -Borrower

638R (0310)                               Page 3 of 3

**EXHIBIT 'A'**

File No.:     **7727883n (mk)**

LOT 1 OF TRACT 2884, IN THE CITY OF RIDGECREST, COUNTY OF KERN, STATE OF
CALIFORNIA, AS PER MAP RECORDED NOVEMBER 30, 1965 IN BOOK 14, PAGE 160 OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

A.P.N. 067-221-12-00-3

NOYER
46821158                                CR

FIRST AMERICAN ELS
DEED OF TRUST                           19

EXHIBIT A TO NOTICE OF REMOVAL
Page 48

# EXHIBIT C

Recording Requested By:
TITLE 365

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP**
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320

Property Address:
500 N SIERRA VIEW ST
RIDGECREST, CALIFORNIA 93555
730 - 1606706

Trustee Sale No.: 00000006109326
APN#: 067-221-12-00

**Jon Lifquist, Assessor – Recorder**
Kern County Official Records

Recorded at the request of:
Public

SABRINA
6/27/2016
8:44 AM

DOC#: 0216083794

Stat Types: 1    Pages: 1

| Fees | 24.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| **PAID** | **$24.00** |

Space above this line for Recorder's use only

## SUBSTITUTION OF TRUSTEE

WHEREAS, JACK B NOYER AND DIANE NOYER, HUSBAND AND WIFE was the original Trustor, FIDELITY NATIONAL TITLE INS CO was the original Trustee, and WELLS FARGO BANK, N.A. was the original Beneficiary, under that certain Deed of Trust dated 04/01/2013 and Recorded on 04/24/2013 as Instrument No. 000213056356 of official records of Kern County, California; and WHEREAS, the undersigned is the present beneficiary ("Beneficiary") under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under the said Deed of Trust in place and instead of said present Trustee.

NOW, THEREFORE, the Beneficiary hereby substitutes, **BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP**, whose address is:  4004 Belt Line Road, Suite 100, Addison, Texas  75001-4320, as Trustee so long as in accordance with the Deed of Trust and applicable law.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

WELLS FARGO BANK, N/A
by BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, its Attorney in Fact

Jorge Rios-Jimenez
Assistant Vice President, Foreclosure Operations

DATED:    **JUN 2 2 2016**

State of:    TEXAS

County of:   DALLAS

On   **JUN 2 2 2016**   , before me,   BRUCE A. COCKLIN   Notary Public, personally appeared   Jorge Rios-Jimenez   who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official Seal.

Signature:

My commission expires:   04 - 01 - 2018

BRUCE A. COCKLIN
ID # 7393064
Notary Public, State of Texas
My Commission Expires
04/01/2018

003-CA-V5
FCCA_SOT_Wells_Int.docx - 05/01/2015 – Ver. 01

Page 1 of 1

**EXHIBIT A TO NOTICE OF REMOVAL**
**Page 50**

# EXHIBIT D



Recording requested by:
**TITLE 365**

When Recorded Mail To:
**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP**
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
AFN #: 067-221-12-00
Property Address:
**500 N SIERRA VIEW ST**
**RIDGECREST, CALIFORNIA 93555**

DFF00000006109326

**Jon Lifquist, Assessor—Recorder**
**Kern County Official Records**
Recorded at the request of
**Public**

JASON
6/29/2016
8:47 AM

DOC#: **0216085375**

| Stat Types: 1 | Pages: 4 |
|---|---|
| Fees | 32.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $32.00 |

Space above this line for Recorder's use only

Trustee Sale No.: 00000006109326          Title Order No.: 730-1606706-70

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $6,390.74 as of 06/27/2016 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens,

FCUS_NoticeOfDefault.rpt - Record - (05/16/2013) - Ver-41                                          Page 1 of 3

**EXHIBIT A TO NOTICE OF REMOVAL**
**Page 52**

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
Trustee Sale No.: 00000006109326        Title Order No.: 730-1606706-70

property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO BANK, N.A.
c/o BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN THAT: BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 04/01/2013, executed by JACK B NOYER AND DIANE NOYER, HUSBAND AND WIFE, as Trustor, to secure obligations in favor of WELLS FARGO BANK, N.A., as Beneficiary Recorded on 04/24/2013 as Instrument No. 000213056356 of official records in the Office of the Recorder of KERN County, California, as more fully described on said Deed of Trust.    Including a Note(s)/ Unconditional Guaranty which had a principal amount of $221,150.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**EXHIBIT A TO NOTICE OF REMOVAL**
**Page 53**

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
Trustee Sale No.: 00000006109326          Title Order No.: 730-1606706-70

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 2/1/2016 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under said Deed of Trust and/or its loan servicer hereby declare(s) all obligations secured thereby immediately due and payable, invoke(s) the power of sale under said Deed of Trust, and elect(s) to sell the property described therein in satisfaction of those obligations without prejudice to any other default remedies permitted by applicable law.

DATED: 06/27/2016

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee for Beneficiary

By: _____
Elaina Moore, Associate Attorney

EXHIBIT A TO NOTICE OF REMOVAL
Page 54

## DECLARATION OF COMPLIANCE
*(California Civil Code Section 2923.55(c))*

Borrower(s):   JACK B NOYER
DIANE NOYER

Property Address:   500 N SIERRA VIEW ST
RIDGECREST CA 93555

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☒ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Wells Fargo Bank, N.A.

By:
Name:   Tiffany Alejandro
Title:   VP Loan Documentation
Date:   4/8/16

053_CA_V3

# EXHIBIT E



September 21, 2016

Jack B Noyer
Diane Noyer
500 N Sierra View St
Ridgecrest CA 93555

Subject: Information about your loan modification application
Mortgage account number: ▓▓▓▓▓▓ Client 936
Property address: 500 N Sierra View St
Ridgecrest CA 93555

Dear Jack B Noyer & Diane Noyer :

Thank you for submitting your application for mortgage assistance. When
we reviewed your modification application, an appraisal and/or other
method of valuation was used during the review process.

We have enclosed a copy of the valuation report(s) for your records.

I'm here to help you
If you have any questions or need further assistance, please contact me
at the number below.

Sincerely,
JACOB ESQUIVEL
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-877-335-1718
ext. 1335520423

Enclosure

HP320/0RI/Pg1

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

# EXHIBIT F



Wells Fargo Home Mortgage
MAC D1111-03J
1525 West Wt Harris Blvd
Charlotte, NC 28262

Tel: 877.913.3376

Dear Mortgagor(s):

Wells Fargo Home Mortgage has retained the services of First American Title Services and their network of Notary Public's for the purpose of further providing excellent service and care for our customers.

A Notary will contact you shortly to set up an appointment to meet with you. This process will assist you in having your modification and/or partial claim documents correctly signed, notarized, and returned to Wells Fargo Home Mortgage in a timely fashion in order to complete your request.

Please take advantage of this FREE service to you.

Please be advised, First American Title Services has no information concerning your loan modification and/or partial claim nor will they be able to answer any questions concerning the modification and/or partial claim. They are not a collection agency and are in no way attempting to collect on any debt you may have. They are merely delivering the documents, providing a free Notary service and then returning the documents to us for you. The documents enclosed are going to explain the terms of your modification and/or partial claim, including your new payment amount and your next payment due date. These documents are for your information only. The Notary will bring additional documents for you to review and sign.

If you have any questions regarding the terms of your modification and/or partial claim, please contact your Home Preservation Specialist.

Sincerely,

Wells Fargo Home Mortgage



Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

**OCTOBER 4, 2016**

**JACK B NOYER**
**DIANE NOYER**
**500 N SIERRA VIEW ST**
**RIDGECREST, CA 93555**

| Account Information | |
|---|---|
| Online: | yourwellsfargomortgage.com |
| Fax: | 1 (866) 359-7363 |
| Telephone | 1 (800) 416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Monday - Thursday, 7:00 a.m. – 9:00 p.m. Central Time |
| | Friday, 7:00 a.m. – 8:00 p.m. Central Time |
| | Saturday, 8:00 a.m. – 4:00 p.m. Central Time |
| Loan Number: | (scan barcode) |
| Property Address: | 500 N SIERRA VIEW ST RIDGECREST, CALIFORNIA 93555 |

Dear JACK B NOYER
   DIANE NOYER

Subject: Your Loan Modification Agreement.

Congratulations! Enclosed is your Loan Modification Agreement (Agreement). This Agreement will reflect the terms of your modified mortgage. It is important to note that your original documents are being modified and are not being refinanced into a new loan. Please read this letter so that you understand all the steps you need to take to complete your modification of your mortgage loan.

What you need to know:

   **1. What you need to know about Borrower Representations**
   This section confirms you're experiencing a hardship along with other important information about your home and current loan which you provided to us. This was used to help you qualify for a loan modification. In addition this section explains that the new terms of your loan modification do not apply until you've signed the Agreement and we have signed it as well. A copy of the Agreement signed by you and by us will be provided to you.

   **2. What you need to know about The Modification**
   This section outlines the terms of your loan modification, and identifies what will change on your mortgage loan. You will see your outstanding balance, interest bearing principal, unpaid balance, deferred interest, fees, monthly mortgage payment and the maturity date.

   **3. Your loan Modification Terms**
   This section details the changes you will see to the terms of your loan. Changes may include your contractual due date and extended maturity date. Please review this section to understand all of the changes to your modified loan.

Wells Fargo Custom Ntn.HAMP 08262016_368

936

HTTP

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2016 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

Wells Fargo Custom Non HAMP 08262016_368

936

**SUMMARY**   Here is a summary of your modified mortgage.

**New Principal Balance.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, property insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. If you fulfill the terms of this agreement at the time of modification, we will waive all late charges that have accrued and remain unpaid.

**Unpaid Principal Balance.** Current Unpaid Principal Balance of your loan remaining as of **OCTOBER 3, 2016.** The Unpaid Principal Balance does not include unpaid interest, real estate taxes, property insurance premiums, or assessments paid on your behalf to a third party. **If you fulfill the terms of this agreement at the time of modification, the Unpaid Principal Balance will be replaced with the New Principal Balance.**

**Interest Rate.** The interest rate on your modified loan will be adjusted as noted in the attached Loan Modification Agreement.

**Term Extension.** To reduce your mortgage payment, we may extend the term of your mortgage. This means we may spread your payments over a longer period.

**Escrow Account.** The terms of your modification agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your real estate taxes, property insurance premiums and other required fees. Upon acceptance of the offer, any prior waiver of escrows by your lender is no longer in effect. **Wells Fargo Home Mortgage** will draw on this account to pay your real estate taxes and property insurance premiums, as they come due. Please note after your modification is complete, your escrow payment amount will adjust at least annually if your real estate taxes, property insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Wells Fargo Home Mortgage must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be **$264.49, which contains the separate escrowed amounts listed above. This amount is included in the loan payment noted in Section 2 of the enclosed modification Agreement; you do not need to remit this amount separately.**

**Change To Biweekly Payment Loans.** If the Loan is a biweekly loan, through the enclosed Agreement, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

Wells Fargo Custom Non-HAMP 082b2016_368

RECORDING REQUESTED BY:
AMBER CULLEN
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENT TO:
FIRST AMERICAN TITLE CO.
DTO – MAIL STOP 3-2-8
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-9991

Space above for recorder's use only

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)
### Title of Document

This cover sheet added to provide adequate space for recording information
($3.00 Additional Recording Fee Applies)

936

This Document Prepared By:
AMBER CULLEN
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

When Recorded Mail To:
FIRST AMERICAN TITLE CO.
DTO – MAIL STOP 3-2-8
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-9991

Tax/Parcel #: 067-221-12-00-3

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| Original Principal Amount: $221,150.00 | Investor Loan No.: |
| Unpaid Principal Amount: $209,256.62 | Loan No: (scan barcode) |
| New Principal Amount $219,309.88 | |
| Total Cap Amount: $10,053.26 | |

## LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

Executed on this day: OCTOBER 3, 2016
Borrower ("I"):[1] JACK B NOYER AND DIANE NOYER, MARRIED
Borrower Mailing Address: 500 N SIERRA VIEW ST, RIDGECREST, CALIFORNIA 93555
Lender or Servicer ("Lender"): WELLS FARGO BANK, N.A.
Lender or Servicer Address: 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") APRIL 1, 2013 and the Note ("Note")
date of APRIL 1, 2013

Property Address ("Property"): 500 N SIERRA VIEW ST, RIDGECREST, CALIFORNIA 93555

Legal Description:

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Fargo Custom Non HAMP 08262016_368                                    936

Page 1

LOT 1 OF TRACT 2884, IN THE CITY OF RIDGECREST, COUNTY OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED NOVEMBER 30, 1965 IN BOOK 14, PAGE 160 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Prior instrument reference: Recorded on APRIL 24, 2013 in INSTRUMENT NO. 000213056356 BOOK NA PAGE NA, of the Official Records of KERN COUNTY, CALIFORNIA

This Loan Modification Agreement ("Agreement") is made on **OCTOBER 3, 2016** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

**1. Borrower Representations.**

I certify, represent to Lender and agree:

A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

D. I have made or will make all payments required within this modification process;

E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is

agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

**2.   The Modification.**

A.   The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$219,309.88** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B.   Interest at the rate of **3.2500%** will begin to accrue on the New Principal Balance as of **NOVEMBER 1, 2016** and the first new monthly payment on the New Principal Balance will be due on **DECEMBER 1, 2016** Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12).   My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 360 | 3.2500% | 11/01/2016 | $954.45 | $264.49 | $1,218.94 | 12/01/2016 |

\* After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

**3.   Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A.   The current contractual due date has been changed from **FEBRUARY 1, 2016** to **DECEMBER 1, 2016**. The first modified contractual due date is **DECEMBER 1, 2016**.

B.   The maturity date is **NOVEMBER 1, 2046**.

C.   The amount of Recoverable Expenses* to be capitalized will be U.S. **$1,320.00**.

\*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

Wells Fargo Custom Non HAMP 08262016_368

Page 3

D. Lender will forgive outstanding Other Fees U.S. $0.00. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. $0.00.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. $215.69.

G. The amount of interest to be included (capitalized) will be U.S. $5,885.30.

H. The amount of the Escrow Advance to be capitalized will be U.S. $2,847.96.

**4. Additional Agreements:**

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and,

upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D.  If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception*: In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

E.  If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

F.  If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

G.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of

Page 5

936

acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

I. If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

Wells Fargo Custom Non HAMP 08262016_368

936

Page 6

O.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P.  In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q.  If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R.  Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on NOVEMBER 1, 2016.

S.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/or subordination Agreement(s).

T.  Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by OCTOBER 19, 2016. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

Wells Fargo Custom Non HAMP 08262016_368

Page 7

936

In Witness Whereof, I have executed this Agreement.

Borrower:JACK B NOYER

Oct. 8, 2016
Date

Borrower:DIANE NOYER

Oct 8, 2016
Date

[Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___CA___

County of ___Kern___

On ___10/8/2016___ before me, ___Jennifer Kuhlman___ Notary Public,
(Date)                                    (here insert name and title of officer)
personally appeared, __JACK B NOYER, DIANE NOYER__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

> JENNIFER KUHLMAN
> COMM. #1999287
> Notary Public - California
> Kern County
> My Comm. Expires Dec. 23, 2016

Wells Fargo Custom Non/HAMP 082n2016_368

Page 8

936

In Witness Whereof, the Lender have executed this Agreement.

WELLS FARGO BANK, N.A.

By : (print name) _____ (sign) _____ Date _____
    (title).

_____ [Space Below This Line for Acknowledgments] _____

STATE OF _____
COUNTY OF _____

The   instrument   was   acknowledged   before   me   this   _____   by
_____.   the
_____ of WELLS FARGO BANK, N.A., a company, on

behalf of said company.

_____
Notary Public

Printed Name: _____
My commission expires: _____

THIS DOCUMENT WAS PREPARED BY:
AMBER CULLEN
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715

Wells Fargo Custom Non HAMP 08262016_368

Page 9

936

Date: OCTOBER 3, 2016
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.

Borrower: JACK B NOYER, DIANE NOYER

Property Address: 500 N SIERRA VIEW ST, RIDGECREST, CALIFORNIA 93555

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____     Oct. 8 2016
Borrower:                                        Date
JACK B NOYER

_____     Oct 8, 2016
Borrower:                                        Date
DIANE NOYER

Wells Fargo Custom Non HAMP 08262016_368

Page 10                                         936

Date: OCTOBER 3, 2016
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.

Borrower: JACK B NOYER, DIANE NOYER

Property Address: 500 N  SIERRA VIEW ST, RIDGECREST, CALIFORNIA 93555

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of WELLS FARGO BANK, N.A.

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____      Oct. 8, 2016
Borrower: JACK B NOYER                          Date

_____      Oct 8, 2016
Borrower: DIANE NOYER                           Date

Wells Fargo Custom Non HAMP 08262016_368                        936
Page 11



1000 Blue Gentian Rd  Suite 300
MAC Code 9999-01N
Eagan, MN 55121

## Important Signing Instructions

This page contains a checklist and instructions for both the borrower and the notary. Please read all instructions prior to signing and notarizing the modification and supporting documents.  These documents must be signed in the presence of a notary. Each set contains pages that the notary must complete, notarize and stamp. Please follow and check off the items during the signing.  Failure to follow instructions may result in a delay in the closing of your modification.

**Notary Requirements:**

☐ There must be 2 sets of documents provided to be completed and notarized. Note: Each set also includes the Loan Modification Agreement. The mortgagor(s) must sign the Loan Modification Agreement along with the Compliance Agreement (if enclosed).

    o  Note: FHA/VA/USDA will require the borrower to sign 1 set of documents

☐ Black ink is required.

☐ Notary's acknowledgement must list mortgagor(s) name exactly as it/they appear(s) on the modification documents.

☐ Stamp must be located below the Borrower Acknowledgement section on the Acknowledgement page. Note: The Lender Acknowledgement section is to be filled out by the Lender.

☐ Stamp and signature must be within the doc margins.

☐ Stamp and all other information must be legible.

☐ Stamp and signature must not cover any verbiage.

☐ State and county must be completed.

☐ Must be dated by the borrower and by the notary – dates must match.

☐ If the Notary marks the incorrect date and must make a correction, please make one strike through of the incorrect date, correct and initial.

☐ Notary must provide date when their commission expires when they notarize the Borrower Acknowledgement section of the modification documents.

☐ Must include notary's printed name both under their signature and after the "before me" verbiage.
☐ Do not print the borrower's driver's license or other identification document numbers on the actual modification and/or supporting documents.

Wells Fargo Custom Non HAMP 08262016_368

936 ▮▮▮▮▮▮▮▮

□ There may be other enclosed documents and/or affidavits. Please ensure that those are read, signed, notarized and dated correctly when returning the package.

**Borrower Requirements:**

□ There must be 2 sets of documents provided to be completed and notarized. Note: Each set also includes the Loan Modification Agreement. The mortgagor(s) must sign the Loan Modification Agreement along with the Compliance Agreement (if enclosed).

    o  Note: FHA/VA/USDA will require the borrower to sign 1 set of documents

□ Black ink is required.

□ Signatures must match printed names.

□ Borrower(s) must date where indicated.

□ If the borrower(s) need(s) to correct a signature or date that they signed or dated in error: they can correct the error but must initial next to the correction.

□ Depending on the state, witness signatures may be required. All signing parties must neatly print their names below their original signatures (Mortgagors, Notaries, Witnesses, Etc.). **Note:** The notary can be a witness, except in the state of Louisiana. They must sign in both the witness and the Borrower Acknowledgement sections.

□ **IMPORTANT:** There may be additional enclosed documents and/or affidavits. Please ensure that those are read. There may be times when they need to be signed, initialed, notarized and dated correctly when returning the package.

    o  **Some Examples are but not limited to:**

        □  Maryland Affidavits.

            □Affidavit of Principal Balance.

            □Prince George's County Finance Affidavit

        □  Rent Rider

        □  Addendums

936 ████████

# EXHIBIT G



# Preferred Payment Plan℠ Authorization Form

*Match your mortgage payments to your payday cycle*

Thank you for selecting Wells Fargo Home Mortgage for your home financing. Managing your mortgage payments is easy when you enroll in the *Preferred Payment Plan*. Simply choose the option below that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings¹ account. The *Preferred Payment Plan* is free, secure and more convenient than writing checks and mailing payments.

**Please note:** Enrolling in the *Preferred Payment Plan* does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds will be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.

**To enroll in the *Preferred Payment Plan*, follow the steps below and fax this signed form to 1-866-287-6241.**

**1. Select the *Preferred Payment Plan* option that matches your pay schedule**
Please check the appropriate box to mark your choice. If this form is signed but no option is selected, you will be set up for monthly withdrawals on your due date.

*If you choose either the Weekly or Bi-weekly option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance – helping you pay off your mortgage faster.*

☐ **Weekly:** One-quarter of your monthly payment will be withdrawn every week, including principal, interest, applicable tax and insurance payments. In a year's time, 52 withdrawals will be made.
Request a withdrawal start date *(must be Monday-Friday and 4 weeks prior to due date):* _____ / _____ / _____

☐ **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week, including principal, interest, applicable tax and insurance payments. In a year's time, 26 withdrawals will be made.
Request a withdrawal start date *(must be Monday-Friday and 3 weeks prior to due date):* _____ / _____ / _____

☐ **Semi-monthly (twice a month):** Half of your monthly payment will be withdrawn on the 15th of the month prior to the due date, and the second half of your monthly payment will be withdrawn on the 1st of month in which payment is due. Each withdrawal will equal one-half of the total monthly payment due, including principal, interest, applicable tax and insurance payments. In a year's time, 24 withdrawals will be made.

☒ **Monthly:** Your monthly payment amount will be withdrawn on your due date (usually the 1st day of every month) or up to 4 days after your due date. The withdrawal amount will equal the total monthly payment due, including principal, interest, applicable tax and insurance payments.
**Please select day for withdrawal:** ☒ Due Date ☐ 1 day after ☐ 2 days after ☐ 3 days after ☐ 4 days after

**2. Specify additional principal, if any**
You can choose to add an additional amount to each of your electronic withdrawals to be applied to your outstanding loan principal.
☐ Yes, please add $_____ to each of my automatic electronic withdrawals.

**3. Supply your account information**
Account type: ☒ Checking   ☐ Savings¹
Customer Bank Routing Number: ▬▬▬▬▬▬▬     Customer Bank Account Number: ▬▬▬▬▬▬▬
(9-digit number at the bottom left of your check)     (To the right of the Bank Routing Number on your check)

**4. Signature**
By signing below, I agree to the Terms and Conditions on the following page and online at wellsfargo.com/preferredterms.

Mortgage Loan Number: _____     Date Signed: _Oct. 6, 2016_
Customer Name: _JACK B. NOYER_     Customer Signature: _____

**Preferred Payment Plan Terms and Conditions**

- I authorize Wells Fargo, its authorized representatives and service providers to initiate electronic withdrawals from my designated account to make monthly payments on my mortgage.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my monthly payment.
- I understand that withdrawn funds will not be applied to my mortgage until sufficient funds have accumulated for a full monthly payment to be made.
- I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I understand that I must provide Wells Fargo notice of at least 10 days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in the program, I may not realize the benefits.
- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

**For questions about your enrollment, please retain this form and call 1-866-386-8519, using authorization code AMPTAC.**

XNML CDFC0 000033 NNNNNNNNNNN NNN 095 024    091980   21695702.1

1. Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts:
- Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party
- A total of six transfers and/or withdrawals in a month including: those listed above, preauthorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone

For more information, please refer to your account agreement with your financial institution. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2009 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801
Doc ID 14383 3/11
CNS4360

# EXHIBIT H

04/15/2021 THU 14:23  FAX 7604465180 PackWrap                    ☒068/095

Wells Fargo Home Mortgage                                        Page 1 of 3
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368



February 10, 2017

DCMLEPDTMZ 000489
[barcode text]
JACK NOYER
DIANE NOYER
500 N SIERRA VIEW ST
RIDGECREST, CA 93555

**Account Information**

| | |
|---|---|
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon – Thurs, 7 a.m. – 9 p.m., |
| | Fri, 7 a.m. – 8 p.m., |
| | Sat, 8 a.m. – 4 p.m., CT |
| Loan number: | |
| Property address: | 500 N SIERRA VIEW ST |
| | RIDGECREST CA 93555 |

**Subject: Important change to your loan modification review**

We service your mortgage in accordance to VA's guidelines.

**Dear JACK NOYER & DIANE NOYER:**

We're writing to inform you that you have been removed from the loan modification review process. At this time, you no longer meet the requirements for assistance because:

A mortgage assistance offer cannot be finalized until the signed documents are returned and we have not received your signed agreement.

**Talk to me about your other options**
There may be other options available to help you avoid a foreclosure sale, provided you meet the requirements.

Other options you may be interested in: If the amount you owe on your mortgage is higher than what you think you can sell your house for, you may want to consider what is known as a "short sale." This option could allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a short sale requires a purchase contract. Once we receive a purchase contract Wells Fargo Home Mortgage will review the terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

HP778 908

**Account Information**
Loan number:  ▪▪▪▪▪▪▪▪▪
Property address: 500 N SIERRA VIEW ST
                  RIDGECREST CA 93555

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**I'm here for you**
If you have any questions about the information in this letter, please call me at the phone number listed below.

Sincerely,

*DEBBIE SANCHEZ*

DEBBIE SANCHEZ
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-855-876-2363 ext. 1335523184
Fax: 1-866-590-8910

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include your account number with all correspondence.

Get free counseling to help manage expenses and avoid foreclosure. Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, among other things, debt collectors may not harass you by using circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not use false or misleading statements threats of violence or arrest or by using obscene language. Collectors may not harass you by using or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors

HF773 635

# EXHIBIT I

04/13/2021  THU 14:24   FAX 7604465180  PackWrap                                    ☒070/095

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

☐☐☐ HOME
☐☐ ☐ MORTGAGE

Page 1 of 6

February 13, 2017

DCML:TDTTR  007426
հիդիիկկկիկիիկիիիկկկիիիիիիիիիիկիկիիիիիիիիիիիիիիիիիիի
JACK B NOYER
DIANE NOYER
500 N SIERRA VIEW ST
RIDGECREST, CA 93555

**Account Information**

| | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-969-0103 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | ███████ |
| Property address: | 500 N Sierra View St |
| | Ridgecrest CA 93555 |

**Subject: Call to discuss options to help you avoid a foreclosure sale**

Dear Jack B Noyer & Diane Noyer:

If you're finding it difficult to keep up with your mortgage payments, we understand. That's why we want to do all we can to help you avoid a foreclosure sale, and help you understand the options available to you. This letter provides the important information you need to know, and what you need to do to help you move forward.

**Talk to me about your options**
As your home preservation specialist, I'm dedicated to helping you through the mortgage assistance process every step of the way. Call me right away, and I'll explain the options that may help you avoid a foreclosure sale, even if the foreclosure process has already begun. The following options may provide a way for you to gracefully exit your home.

- Short sale - allows you to sell your home for less than the amount owed on your mortgage, and may release you from your obligation to repay your mortgage balance.
- Deed in lieu of foreclosure, sometimes referred to as a Mortgage Release - enables you to voluntarily transfer ownership of your home to the owner of your mortgage, and may release you from your obligation to repay your mortgage balance, either in full or in part.

To help you better understand these options and how you may benefit, I've included important answers to frequently asked questions about a short sale and a deed in lieu of foreclosure.

**What you need to know about foreclosure**
We will continue to work with you to help you avoid a foreclosure sale. However, if you are behind on your mortgage payments, please understand that the foreclosure process could begin at anytime. If your mortgage has already been referred to foreclosure, that process will continue to move forward until a complete application for assistance has been received. Also, as part of the foreclosure process, you may receive notices from a third-party attorney delivered by mail, or see steps being taken to proceed with a foreclosure sale of your home.

**I'm here to help you get started now**

LW400 226 0117

**Account Information**
Loan number:
Property address: 500 N Sierra View St
Ridgecrest CA 93555

Let me help you understand your options, eligibility and next steps. Please call me immediately, while there's still time to help you avoid a foreclosure sale. I'll answer your questions and help get the process started. Thank you for taking care of this urgent matter - you can reach me at the phone number noted below.

Sincerely,

*DEBBIE SANCHEZ*

DEBBIE SANCHEZ
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 1-855-876-2363 ext. 1335523184
Fax: 1-866-590-8910

**Active Servicemembers**
The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse or financial dependant of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Military Customer Service Center at 1-866-936-SCRA (1-866-936-7272) or fax your Active Duty Orders to 1-877-658-4585, attention Special Loans/SCRA.

**Get free counseling to help manage expenses and avoid foreclosure**
Reach out to a local HUD-approved, non-profit housing counseling agency to help you avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc.Or call 1-800-569-4287, enter your zip code, and press "3" for counseling on foreclosure, default and mortgage delinquency; press "4" for home equity counseling.

**Beware of foreclosure scams - tips and warning signs**
Scam artists are stealing millions of dollars from distressed homeowners by promising immediate relief from foreclosure or demanding cash for counseling services when HUD-approved counseling agencies provide the same services for free. If you receive an offer, information or advice that sounds too good to be true, it probably is. Don't let them take advantage of you, your situation, your home or your money. Remember, help is free.

**How to spot a scam - beware of a company or person who:**
- Asks for a fee in advance to work with your lender to modify, refinance or reinstate your mortgage.
- Guarantees they can stop a foreclosure or get your loan modified. Advises you to stop paying your mortgage company and pay them instead.
- Pressures you to sign over the deed to your home or sign any paperwork that you haven't had a chance to read, and you don't fully understand.
- Claims to offer "government approved" or "official government" loan modifications.
- Asks you to release personal financial information online or over the phone and you have not been working with this person and/or do not know him or her.

**How to report a scam - do one of the following:**

LW400 098 0117

# EXHIBIT J

04/19/2021 MON 12:32  FAX 7604465180 PackWrap                              ☑018/034



Recording requested by:
TITLE 365

When Recorded Mail To:
BARRETT DAFFIN FRAPPIER TURNER &
WEISS, LLP
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(866) 795-1852
APN #: 007-221-12-00
Property Address:
500 N SIERRA VIEW ST
RIDGECREST, CALIFORNIA 93555

NOTS00000081003326

Jon Lifquist, Assessor-Recorder
Kern County Official Records

Recorded Electronically by:
718 Title365

DOC#: 000217023294

Stat Types: 1    Pages: 2
FEES        24.00
TAXES        .00
OTHER        .00
PAID        24.00

Space above this line for Recorder's use only

Trustee Sale No.: 00000081003326    Title Order No.: 730-1606786-70    FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES
ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/01/2013. UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER.

BARRETT DAFFIN FRAPPIER TURNER & WEISS, LLP, as duly appointed Trustee under and pursuant to Deed
of Trust Recorded on 04/24/2013 as Instrument No. 000213054356 of official records in the office of the County
Recorder of KERN County, State of CALIFORNIA.
EXECUTED BY:    JACK B NOYER AND DIANE NOYER, HUSBAND AND WIFE,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH
EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in
lawful money of the United States).
DATE OF SALE:    04/03/2017    TIME OF SALE:    2:00 PM
PLACE OF SALE:    AT THE FRONT ENTRANCE TO THE CITY HALL, 1501 TRUXTUN AVENUE,
BAKERSFIELD, CA 93301.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
500 N SIERRA VIEW ST, RIDGECREST, CALIFORNIA 93555
APN#:    007-221-12-00

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied,
FCUR_NoticeOfTrusteeSale.rpt - Revised - 04/01/2015 - Ver.20    Page 1 of 2

04/15/2021 THU 14:07  FAX 7604465180 PackWrap                                    @008/095

Trustee Sale No.: 00000006109326        Title Order No.: 730-1606706-70        FHA/VA/FMI No.:

regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $322,731.24. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.servicelinkASAP.com for information regarding the sale of this property, using the file number assigned to this case 00000006109326. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
714-730-2727
www.servicelinkASAP.com

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP as Trustee
20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765
(866) 795-1852

_____          Dated: 02/28/2017
BY: Manuel Loeza

        Manuel Loeza
        Foreclosure Specialist

FCUS_NoticeOfTrusteeSale.rpt - Rev.d - 04/01/2016 - Ver.39                              Page 2 of 2

# EXHIBIT K

04/15/2021 THU 14:21   FAX 7604465180 PackWrap                    ☑061/095

Page 1 of 2

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

[HOME MORTGAGE logo]

**February 28, 2017**

DCML1TDTVJ  002217

JACK B NOYER
DIANE NOYER
500 N SIERRA VIEW ST
RIDGECREST, CA 93555

**Account Information**

| | |
|---|---|
| Fax: | 1-866-278-1179 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon - Fri, 6 AM - 10 PM |
| | Sat, 8 AM - 2 PM CT |
| Loan Number: | |
| Property Address: | 500 N Sierra View St |
| | Ridgecrest CA 93555 |

Subject: Your request for mortgage assistance

Dear Jack B Noyer & Diane Noyer:

We're responding to your recent outreach to us. At this time, we are not moving forward with a review of your mortgage for assistance.

We based our decision by reviewing your mortgage history, the recent information you provided us, and the current circumstances surrounding your mortgage.

**What you need to know about foreclosure**
If your mortgage has been or will be referred to foreclosure, that process may move forward now.

**We're here for you**
If you have any questions about the information in this letter, please call us at 1-866-234-8271.

Home Preservation Department
Wells Fargo Home Mortgage

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include your account number with all correspondence.

Where appropriate Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not

NP006 936 0120

EXHIBIT A TO NOTICE OF REMOVAL
Page 91

# EXHIBIT L

04/15/2021 THU 14:25 FAX 7604465180 PackWrap                                        ☑077/095

**For Return Address Purposes Only**

Wells Fargo Bank N.A.
Return Mail Operations
PO Box 14411
Des Moines IA 50306-3411

| OMB No. 1545-0877 | 04/11/18 |
| **2017** | **Acquisition or Abandonment of Secured Property** |
| Form 1099-A | |

DGTXITDTM9  000028DGTXITXYT09000000027936

JACK B NOYER

☑ CORRECTED (if checked)

| LENDER'S name, street address, city, state, ZIP code, and telephone no. | | OMB No. 1545-0877 | 04/11/18 |
|---|---|---|---|
| WELLS FARGO BANK, N. A.<br>1 HOME CAMPUS R3500-04P<br>DES MOINES, IA 50328-0001 | | **2017**<br>Form 1099-A | **Acquisition or Abandonment of Secured Property** |
| 1-800-232-0236 | | 1 Date of lender's acquisition or knowledge of abandonment<br>05/14/17 | 2 Balance of principal outstanding<br>$209,256.62 | **Copy B** |
| LENDER'S Federal identification number | BORROWER'S identification number | | | **For Borrower** |
| 94-1347393 | | | | This is important tax |
| BORROWER'S name, street address (including apt. no.), city, state and ZIP code | | 3 | 4 Fair market value of property<br>$265,000.00 | information and is being furnished to the Internal Revenue Service. If you are required to file a |
| JACK B NOYER | | | | return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| | | 5 If checked, the borrower was personally liable for repayment of the debt ☐ | | |
| | | 6 Description of property<br>500 N SIERRA VIEW S<br>RIDGECRES CA 93565 | | |
| Account number (see instructions) | | | | |

Form 1099-A                    (Keep for your records)          Department of the Treasury-Internal Revenue Service

## Instructions for Borrower

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition generally is measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property, or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. The tax consequences of abandoning property depend on whether or not you were personally liable for the debt. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about your tax consequences.

Property means any real property (such as a personal residence); any intangible property; and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

Borrower's taxpayer identification number. For your protection, this form may show only the last four digits of your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN). However, the issuer has reported your complete identification number to the IRS.

Account number. May show an account or other unique number the lender assigned to distinguish your accounts.

Box 1. For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

Box 2. Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned.

Box 4. Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

Box 5. Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

Box 6. Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

Future developments. For the latest information about developments related to Form 1099-A and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/form1099a*.

# EXHIBIT M

04/15/2021 THU 14:27  FAX 7604465180 PackWrap                                      [Ø]092/095



**DEPARTMENT OF VETERANS AFFAIRS**
Regional Office
9500 Bay Pines Blvd
St. Petersburg, FL 33744



Honorable Senator Dianne Feinstein
U.S. Senator
One Post Street, Suite 2450
Attn: Ms. Emily Condon
San Francisco, CA 94104

In Reply Refer To:
Noyer, Jack

Dear Ms. Condon:

This is in reply to Senator Feinstein's inquiry written on behalf of Mr. Jack Noyer. Mr. Noyer is requesting your assistance regarding his foreclosed property in Ridgecrest, CA.

A review of the loan shows that the Servicer tried to assist Mr. Noyer. Mr. Noyer was offered a Loan Modification so that he could retain his home. Unfortunately, Mrs. Noyer passed away in November 2016 before the Loan Modification was fully executed. The Servicer sent a new Modification to Mr. Noyer and it appears he declined the Mod and decided to sell the property. In February 2017, Mr. Noyer informed VA that he was listing the property for sale. As there was equity in the property, VA requested a postponement of the foreclosure sale, to allow Mr. Noyer an opportunity to sell the property and the Servicer agreed to the postponement. The Servicer tried to work with Noyer to provide him an opportunity to retain his home and when that was not possible, to sell it.

VA is sorry a more positive outcome did not prevail for Mr. Noyer.

Thank you for looking out for our veterans.

Sincerely yours,

Julianna M. Boor
Director

# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JACK B. NOYER

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
5/24/2021 2:04 PM
Kern County Superior Court
By Veronica Urena, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):*<br>BCV-21-101158 |

The Superior Court of California, Kern County, 1415 Truxtun Ave. Bakersfield, CA 93301

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mr. Courtney W. Redman, The Law Office of Courtney W. Redman, Esq. 1055 W 7th St., 33rd Fl, Los Angeles, CA 90017

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* 5/24/2021 | TAMARAH HARBER-PICKENS | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*: Wells Fargo Bank, N.A.

   under: [X] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
           [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]     [ Clear this form ]



|  | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF KERN**<br>**BAKERSFIELD COURT**<br>**1415 TRUXTUN AVENUE**<br>**BAKERSFIELD CA 93301** | FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF KERN<br>MAY 21, 2021<br>BY *Sophia Munoz Alvarez* DEPUTY |

| PLAINTIFF/PETITIONER:<br>**JACK B NOYER**<br>DEFENDANT/RESPONDENT:<br>**WELLS FARGO BANK, N.A.** | |
|---|---|
| NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND<br>NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND<br>NOTICE OF CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>BCV-21-101158 |

By order of the presiding judge, the above entitled case is assigned to the Honorable Thomas S. Clark for all purposes. It will be managed on the direct calendar program in Bakersfield Department 17 until its conclusion. Peremptory challenges, if any, must be made within the times set out in CCP §170.6. Please include the initials **TSC** after the case number on all future pleadings filed in this case.

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL:**
You are ordered to appear on **September 03, 2021** in **Bakersfield Department 17** at **8:30 AM** in the above entitled court to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110. All appearances are mandatory, unless the court receives the required proof(s) of service five (5) court days prior to the hearing date, and then no appearance is necessary.

**TO EACH PARTY AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**
This case is set for Case Management Conference, by the Honorable Thomas S. Clark on **November 17, 2021** at **8:15AM** in **Bakersfield Department 17** of the above entitled court. Case management statements are to be filed at least fifteen (15) days prior to the conference in accordance with California Rules of Court, Rules 3.720 – 3.730. All parties shall comply with California Rules of Court, Rules 3.720 – 3.730.

### NOTICE TO PLAINTIFF'S COUNSEL
**IMPORTANT: You are required to serve this Notice of Assignment and Notice of Order to Show Cause Date and Notice of Case Management Conference Date with the Summons, Complaint [Local Rule 3.7(a)], Alternative Dispute Resolution (ADR) Information Packet, and ADR Stipulation and Order Form ( California Rules of Court, Rule 3.221).**

### NOTICE TO CROSS COMPLAINANT'S COUNSEL
**IMPORTANT: If you are bringing a cross complaint against new parties, you are, likewise, required to serve this Notice of Assignment pursuant to California Rules of Court, Rule 3.110 and Notice of Order to Show Cause date and Notice of Case Management Conference date on the new cross defendants.**

**TAMARAH HARBER-PICKENS**
CLERK OF THE SUPERIOR COURT

Date: May 21, 2021

By:     *Sophia Munoz Alvarez*
Sophia Munoz Alvarez, Deputy Clerk

Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page 1 of 4

JACK NOYER VS WELLS FARGO BANK, N.A.
BCV-21-101158

The Clerk of the Superior Court's office has received a civil complaint from you for filing. Pursuant to the Trial Court Delay Reduction Act, your case has been assigned to the Honorable Thomas S. Clark as monitoring judge.

Judge Thomas S. Clark has instituted a direct calendaring system for all cases assigned to him/her as the monitoring judge.

All law and motion, case management and trial setting conferences, ex parte matters and trials will be scheduled before him/her in Bakersfield Department 17. This will involve all cases in which the clerk has assigned the initials TSC to the complaint at the time of filing. Counsel is expected to make the initials of the monitoring judge a part of the case number on all pleadings and papers.

Law & Motion and Ex-Parte hearing dates must be pre-cleared by contacting the Direct Calendaring Clerk at 661-868-4900. Tentative rulings can be located by visiting "http://www.kern.courts.ca.gov/", after 4:00 pm. Click on the Non-Criminal Case Information link to enter the case number. Please note, not all departments provide tentative rulings.

At the time of filing the complaint, plaintiff's counsel will be given a Notice of Case Management Conference which sets a conference approximately one hundred eighty (180) days after filing of the complaint. This notice must be served with the summons and complaint on all defendants. Defendants must serve the notice on all cross-defendants named. The notice must also be served on interveners and lien claimants.

Telephonic appearances for case management conferences and law and motion hearings are available through Court Call. The toll free telephone number for Court Call is (888) 88-COURT. Proper procedures must be complied with under California Rules of Court, Rule 3.670. Arrangements to make appearances through Court Call must be made at least five (5) court days prior to the hearing date.

Another judge will hear settlement conferences in cases assigned to Judge Thomas S. Clark. However, those cases that do not settle will be set for trial before him/her.

JACK NOYER VS WELLS FARGO BANK, N.A.
BCV-21-101158

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF KERN**
**SPECIAL RULES RELATING TO CASE MANAGEMENT CONFERENCES**

At least fifteen (15) days prior to the case management conference, each party shall prepare, file and serve on each other party a case management conference statement providing the Court with the following information:

1. The "at-issue" status of the case including any new parties that may be contemplated;
2. A brief statement of the type of case and the general facts or contentions;
3. A description of the discovery done to date and that contemplated to be done;
4. Estimated time for trial and whether a jury is demanded;
5. Whether or not the case is entitled to priority in trial setting and if so, the legal authority thereof;
6. An evaluation of the case for alternative dispute resolution, including arbitration (judicial or binding), mediation or private judge handling;
7. If a person injury action, a description of the injuries sustained by each plaintiff and the elements of claimed damage;
8. A statement of any settlement negotiations undertaken thus far;
9. The name of the attorney primary responsible for the case on behalf of the party filing the statement.

More than one party may join in the filing of a single statement.

The case management conference shall be attended by the attorney primarily responsible for the case on behalf of each party or a member of his or her firm or counsel formally associated in the case. The attorney attending shall be thoroughly familiar with the case, and be able to engage in meaningful discussions with court and counsel, and to enter into agreements on behalf of his or her client on the following subjects:

1. The "at-issue" status of the case including the dismissal of the unnamed doe defendants or cross-defendants by agreement of all parties;
2. Discovery conducted and remaining to be done;
3. Amenability of the case to alternative dispute resolution including, but no limited to, arbitration (judicial or binding), mediation, and private judge handling.
4. Delineation of issues including stipulation of facts not in substantial controversy;
5. Settlement prospects;
6. Setting the matter for trial, pre-trial conferences, settlement conference or further case management conference;
7. Any other matters relevant to the processing of the case to a final resolution.

Any violation of these rules shall result in the imposition of substantial sanctions which may include monetary, issue, termination, or other appropriate sanctions.

JACK NOYER VS WELLS FARGO BANK, N.A.
BCV-21-101158

**CERTIFICATE OF POSTING**

The undersigned, of said Kern County, certify:  That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference*** attached hereto on all interested parties and any respective counsel of record in the within action by posting true copies thereof,  to the Superior Court of California, County of Kern, Non-Criminal Case Information Portal (https://odyprodportal.kern.courts.ca.gov/portalprod).

Date of Posting:     May 21, 2021

Place of Posting:    Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**TAMARAH HARBER-PICKENS**
CLERK OF THE SUPERIOR COURT

Date:  May 21, 2021

By:        *Sophia Munoz Alvarez*
Sophia Munoz Alvarez, Deputy Clerk

Certificate of Posting - Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page **4** of **4**

**EXHIBIT B TO NOTICE OF REMOVAL**
**Page 100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:                    FAX NO *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name)* : | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN**<br>STREET ADDRESS:<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>BRANCH NAME:<br>PLAINTIFF:<br><br>DEFENDANT: | |
| **ADR STIPULATION AND ORDER FORM** | CASE NUMBER: |

1.  Pursuant to California Rule of Court 3.221(a)(4), the parties and their attorneys stipulate that all claims in

    this action will be submitted to the following alternative dispute resolution (ADR) process:

    a.  ☐  Private Mediation.

    b.  ☐  Neutral Evaluation.

    c.  ☐  Binding Arbitration.

    d.  ☐  Referee/Special Master.

    e.  ☐  Settlement Conference with Private Neutral.

    f.  ☐  Non-binding Judicial Arbitration pursuant to CCP§1141.10 et seq., and applicable Rules of Court.

    g.  ☐  Discovery will remain open until 30 days before trial.

    h.  ☐  Other:

2.  It is also stipulated that

    a. _____ (name of individual neutral, not organization)

       has consented to and will serve as

    b. _____ (neutral function/process) and that the session will take place on

    c. _____ (enter a FIRM date) and that all persons necessary to effect a settlement
       and having full authority to resolve the dispute will appear at such session.

---

CEB | Essential
ceb.com | Forms

**EXHIBIT B TO NOTICE OF REMOVAL**
**Page 101**

| PLAINTIFF: | CASE NUMBER: |
|---|---|
| DEFENDANT: | |

3. Date:

    a.   On behalf of Plaintiff/s

_____      _____
(TYPE OR PRINT NAME)                            (SIGNATURE OF PLAINTIFF OR ATTORNEY)

_____      _____
(TYPE OR PRINT NAME)                             (SIGNATURE OF PLAINTIFF OR ATTORNEY)

          ☐ Continued on *Attachment 3a* (form MC-025).

    b.   On behalf of Defendant/s

_____      _____
(TYPE OR PRINT NAME)                             (SIGNATURE OF DEFENDANT OR ATTORNEY)

_____      _____
(TYPE OR PRINT NAME)                             (SIGNATURE OF DEFENDANT OR ATTORNEY)

          ☐ Continued on *Attachment 3a* (form MC-025).

4. ORDER:

    a.   ☐ The ADR process is to be completed by                           .

    b.   ☐ The Case Management Conference currently set for         , at
                                    ☐ a.m. ☐ p.m. in Department           :

         i.   ☐  Remains on calendar.
         ii.  ☐  Is hereby vacated.

    c.   ☐ Mediation Status Review.

    d.   ☐ Case Status Review re:                            .

    e.   ☐ Final Case Management Conference is set for      , at       ☐ a.m.
          ☐ p.m. in Department      .

    f.   ☐ Judicial Arbitration Order Review Hearing will be set by notice upon assignment of
         arbitrator.

**IT SO ORDERED.**

Date:                                 _____
                                     JUDICIAL OFFICER

CEB | ceb.com Essential FORMS

**Tamarah Harber-Pickens**
Clerk of the Superior Court



**SUPERIOR COURT**
Telephone 661-868-5393
1415 Truxtun Avenue
Bakersfield CA  93301

Courtney Redman
E-File

Date :                                      **5/24/21**
Case No.:                          **BCV-21-101158**
Case Name:        **NOYER VS WELLS FARGO BANK**
Document:                      **Proposed Summons**
                              **(Envelope Id #6505779)**

The attached papers are being returned for the following reason(s):  ☐ Check # _____ Returned
☐ This pleading does not appear to be for Superior Court, Kern County.
☐ The attached document is an improper *ex-parte* communication and has not been considered by the Court.
☐ Fee of $_____ required or a Request to Waive Court Fees must be submitted.
☐ **Application for Waiver of Fees missing attachment(s):**
　　☐ Last three (3) paystubs, if employed.
　　☐ Certified Copy of Statement of Account for previous six (6) months certified by Dept. of Corrections
　　☐ Trust Account Withdrawal Order form (CDC form 193) completed by the Dept. of Corrections
　　　　indicating $3.00 fee to Dept. of Corrections has been paid or insufficient funds in the account to cover.
☐ Does not conform to Rule 2.100-2.119, California Rules of Court, as to form and format.
☐ Superior Court case number is wrong, incomplete, or missing.
☐ Consolidated matter: All consolidated case numbers must be listed in the heading with the lead case listed first.
☐ Consolidated matter:
☐ Title is incorrect or missing parties.
☒ Summons does not conform to complaint/cross-complaint/petition. **Please list the name of defendant with the punctuation used within the complaint.**
☐ Not an original.  Copies are not acceptable.
☐ Copies must be provided if *endorsed* copies are requested.  Submit one original plus _____ copy(ies).
☐ Does not conform to Kern County Local Rule/Code:
☐ Must use Mandatory Judicial Council form.
☐ _____ is not eligible for filing.  Reason:
☐ Item(s) # _____ incomplete.
☐ Missing required forms/attachment:
☐ Original Will must be presented at the time of filing petition.
☐ Signature missing:
☐ Date and place of execution not completed.
☐ Document(s) must be verified.
☐ Show date, time, and location of hearing pursuant to California Rules of Court.
☐ The date you have noticed this matter is a Court holiday/weekend.
☐ Acknowledgement of Receipt/Citation must be attached to the completed proof of service.
☐ Attach Proof of Service on opposing party.
☐ Correct Proof of Service:
☐ Not appraised by the Probate Referee.
☐ Order/Judgment does not conform to the Court minutes.
☐ Order page does not contain enough information regarding case; need at least three lines of text with identifying information for order and case (short title case and case number).
☐ Dismissal cannot be entered for the following reasons:
☐ Other:

**Tamarah Harber-Pickens**
CLERK OF THE SUPERIOR COURT

By:  _Maribel Villalon_ , Deputy Clerk

**ANY CORRESPONDENCE REQUIRING AN ANSWER FROM THE COURT MUST BE
ACCOMPANIED BY A SELF-ADDRESSED STAMPED ENVELOPE LARGE ENOUGH TO RETURN DOCUMENTS**
Rev. 12/2017

**EXHIBIT B TO NOTICE OF REMOVAL
Page 103**

Envelope Details                                                                Page 1 of 2

<u>Print this page</u>

# Case # BCV-21-101158 - NOYER VS WELLS FARGO BANK (Clark, Thomas S.)

**Case Information**

| Location | Kern - Bakersfield-Civil |
|---|---|
| Date Filed | 5/24/2021 2:31 PM |
| Case Number | BCV-21-101158 |
| Case Description | NOYER VS WELLS FARGO BANK |
| Assigned to Judge | Clark, Thomas S. |
| Attorney | Courtney Redman |
| Firm Name | The Law Office of Courtney W. Redman, Esq. |
| Filed By | Courtney Redman |

**Fees**

| Convenience Fee | $0.25 |
|---|---|
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $3.50 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $3.75 |

**Payment**

| Account Name | LegalConnect eCheck |
|---|---|
| Transaction Amount | $3.75 |
| Transaction Response | |
| Transaction ID | 10134070 |
| Order # | 006505779-0 |

**Summons**

| Filing Type | EFile |
|---|---|
| Filing Code | Summons |
| Motion Code | |
| Filing Description | |
| Reference Number | |
| Comments | |

https://california.tylerhost.net/EnvelopeDetails.aspx?envelopeguid=72146463-204b-4c88-...     5/24/2021

**EXHIBIT B TO NOTICE OF REMOVAL**
**Page 104**

Envelope Details

| Courtesy Copies | mailcheck@legalconnect.com |
| Preliminary Copies | support@legalconnect.com |
| Status | Rejected |

**Fees**

| Court Fee | $0.00 |
| Service Fee | $0.00 |

**Rejection Information**

| Reason | Time | Comment |
|---|---|---|
| 14 - Rejected | 5/24/2021 3:23 PM | Please list the name of defendant with the punctuation used within the complaint. |

**Documents**

| *Lead Document* | 43093Summo002ec9.pdf | [Original] |

**Associated Parties**

Party/Business Name

JACK B NOYER

**EXHIBIT B TO NOTICE OF REMOVAL**
**Page 105**

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Wells Fargo Bank, NA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Jack B. Noyer

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):*<br>BCV-21-101158 |
|---|---|

The Superior Court of California, Kern County, 1415 Truxtun Ave. Bakersfield, CA 93301

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mr. Courtney W. Redman, The Law Office of Courtney W. Redman, Esq. 1055 W 7th St., 33rd Fl, Los Angeles, CA 90017

| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |
|---|---|---|

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**     | Print this form | Save this form |     | Clear this form |



**Tamarah Harber-Pickens**
Clerk of the Superior Court

**SUPERIOR COURT**
Telephone 661-868-5393
1415 Truxtun Avenue
Bakersfield CA  93301

**JACK NOYER**
**RETURNED VIA EFILE**
**COURTNEY REDMAN**

Date :                        **06/01/2021**
Case No.:                  **BCV-21-101158**
Case Name:     **NOYER VS WELLS FARGO BANK**
Document:                **PROOF OF SERVICE**

The attached papers are being returned for the following reason(s):   ☐ Check # _____ Returned
☐  This pleading does not appear to be for Superior Court, Kern County.
☐  The attached document is an improper *ex-parte* communication and has not been considered by the Court.
☐  Fee of $_____  required or a Request to Waive Court Fees must be submitted.
☐  **Application for Waiver of Fees missing attachment(s):**
　　☐  Last three (3) paystubs, if employed.
　　☐  Certified Copy of Statement of Account for previous six (6) months certified by Dept. of Corrections
　　☐  Trust Account Withdrawal Order form (CDC form 193) completed by the Dept. of Corrections
　　　　indicating $3.00 fee to Dept. of Corrections has been paid or insufficient funds in the account to cover.
☐  Does not conform to Rule 2.100-2.119, California Rules of Court, as to form and format.
☐  Superior Court case number is wrong, incomplete, or missing.
☐  Consolidated matter: All consolidated case numbers must be listed in the heading with the lead case listed
　  first.
☐  Consolidated matter:
☐  Title is incorrect or missing parties.
☐  Summons does not conform to complaint/cross-complaint/petition.
☐  Not an original.  Copies are not acceptable.
☐  Copies must be provided if *endorsed* copies are requested.  Submit one original plus _____ copy(ies).
☐  Does not conform to Kern County Local Rule/Code:
☐  Must use Mandatory Judicial Council form.
☐  　　　　is not eligible for filing.  Reason:
☐  Item(s) # 　　　incomplete.
☐  Missing required forms/attachment:
☐  Original Will must be presented at the time of filing petition.
☐  Signature missing:
☐  Date and place of execution not completed.
☐  Document(s) must be verified.
☐  Show date, time, and location of hearing pursuant to California Rules of Court.
☐  The date you have noticed this matter is a Court holiday/weekend.
☐  Acknowledgement of Receipt/Citation must be attached to the completed proof of service.
☐  Attach Proof of Service on opposing party.
☐  Correct Proof of Service:
☐  Not appraised by the Probate Referee.
☐  Order/Judgment does not conform to the Court minutes.
☐  Order page does not contain enough information regarding case; need at least three lines of text with
　  identifying information for order and case (short title case and case number).
☐  Dismissal cannot be entered for the following reasons:
☒  **Other:  Duplicate Filing, Original Proof of Service was filed on 5/28/2021. Please review.**

　　　　　　　　　　　　　　　　　　　　**Tamarah Harber-Pickens**
　　　　　　　　　　　　　　　　　　　CLERK OF THE SUPERIOR COURT

　　　　　　　　By: _Gina Sala_____ , Deputy Clerk

**ANY CORRESPONDENCE REQUIRING AN ANSWER FROM THE COURT MUST BE
ACCOMPANIED BY A SELF-ADDRESSED STAMPED ENVELOPE LARGE ENOUGH TO RETURN DOCUMENTS**
Rev. 12/2017

Envelope Details                                                      Page 1 of 2

<u>Print this page</u>

# Case # BCV-21-101158 - NOYER VS WELLS FARGO BANK (Clark, Thomas S.)

| Case Information | |
|---|---|
| Location | Kern - Bakersfield-Civil |
| Date Filed | 6/1/2021 3:45 PM |
| Case Number | BCV-21-101158 |
| Case Description | NOYER VS WELLS FARGO BANK |
| Assigned to Judge | Clark, Thomas S. |
| Attorney | Courtney Redman |
| Firm Name | ABC Legal Services, Inc. |
| Filed By | Robert Caylor |

| Fees | |
|---|---|
| Convenience Fee | $0.25 |
| Total Court Case Fees | $0.00 |
| Total Court Party Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $3.50 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Total Taxes (for non-court fees) | $0.00 |
| Grand Total | $3.75 |

| Payment | |
|---|---|
| Account Name | ABC Checking Account |
| Transaction Amount | $3.75 |
| Transaction Response | |
| Transaction ID | 10205667 |
| Order # | 006554552-0 |

| Proof of Service of Summons/Complaint | |
|---|---|
| Filing Type | EFile |
| Filing Code | Proof of Service of Summons/Complaint |
| Motion Code | |
| Filing Description | |
| Reference Number | ABC_REF-8138530_70816392 |
| Comments | |

**EXHIBIT B TO NOTICE OF REMOVAL**
**Page 108**

Envelope Details                                                    Page 2 of 2

| Status | Rejected |
|---|---|

**Fees**

| Court Fee | $0.00 |
|---|---|
| Service Fee | $0.00 |

**Rejection Information**

| Reason | Time | Comment |
|---|---|---|
| 14 - Rejected | 6/1/2021 4:54 PM | Duplicate Filing, Original Proof of Service was filed on 5/28/2021. Please review. |

**Documents**

| *Lead Document* | REF-8138530 POS.pdf | [Original] |
|---|---|---|

**Associated Parties**

Party/Business Name

JACK B NOYER

**EXHIBIT B TO NOTICE OF REMOVAL
Page 109**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State, Bar number, and address)*:<br>**The Law Office of Courtney W. Redman, Esq.**<br>**1055 W. 7th St., 33rd Floor, Los Angeles**<br>**CA 90017** | *FOR COURT USE ONLY* |
|---|---|

TELEPHONE NO.: **213-863-4747**       FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:  **JACK B. NOYER**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN**

STREET ADDRESS:  **1415 Truxtun Avenue**

MAILING ADDRESS:  **1415 Truxtun Avenue**

CITY AND ZIP CODE:  **Bakersfield 93301**

BRANCH NAME:  **Metropolitan Division**

PLAINTIFF/PETITIONER: JACK B. NOYER

DEFENDANT/RESPONDENT: WELLS FARGO BANK N.A.

CASE NUMBER:  **BCV-21-101158**

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:  **REF-8138530**

BY FAX

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of *(specify documents)*:
**SUMMONS; COMPLAINT; NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND NOTICE OF CASE MANAGEMENT CONFERENCE**

3. a. Party served *(specify name of party as shown on documents served)*:
**Wells Fargo Bank, N.A.**

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b whom substituted service was made) *(specify name and relationship to the party named in item 3a )*:
**CORPORATION SERVICE COMPANY WHICH d/b/a CSC - LAWYERS INCORPORATING SERVICE, REGISTERED AGENT**

4. Address where the party was served:
**2710 Gateway Oaks Dr,, Suite 150N, Sacramento, CA 95833**

5. I served the party *(check proper box)*
   a. [X] **by personal service. I** personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **05/27/2021** at *(time)*: **2:49 PM**

   b. [ ] **by substituted service. On** *(date)*:            at *(time)*:            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

   (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [ ] I thereafter caused to be mailed (by first class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc § 415.20). Documents were mailed on *(date)*:            from *(city)*:            or [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California POS-<br>010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

Tracking #: 0070816392

REF: **REF-8138530**

| PLAINTIFF/PETITIONER: JACK B. NOYER | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: WELLS FARGO BANK N.A. | BCV-21-101158 |

c. ☐ **by mail and acknowledgement of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*               (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. (Attach completed *Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify)* **Wells Fargo Bank, N.A. c/o CORPORATION SERVICE COMPANY WHICH d/b/a CSC -**

    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)              ☐ 415.46 (occupant)

                              ☐ other:

7. **Person who served papers**

a. Name:           **Andrew Cornwell**

b. Address:       **PO Box 215214, Sacramento, CA 95821**

c. Telephone number:  **916-607-0845**

d. The fee for service was: **$ 65.00**

e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ registered California process server:

        (i) ☐ owner ☐ employee ☒ independent contractor.  For:    **ABC Legal Services, LLC**

        (ii) ☒ Registration No.: **2015-06**        Registration #: **6779**

        (iii) ☒ County:    **Sacramento County**      County:  **Los Angeles**

**BY FAX**

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and I certify** that the foregoing is true and correct.

Date:  05/27/2021

      **Andrew Cornwell**
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)            (SIGNATURE)

REF: **REF-8138530**         **PROOF OF SERVICE OF SUMMONS**        Tracking #: **0070816392**

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 301 N. Lake Avenue, Suite 1100, Pasadena, California 91101-4158.

On the date below, I served the foregoing document(s) described as:

**NOTICE OF REMOVAL BY DEFENDANT WELLS FARGO BANK, N.A.,
PURSUANT TO 28 U.S.C. § 1332**

on the interested parties in this action by placing a true and correct copy enclosed in a sealed envelope as follows:

**Served by Means Other Than Electronically Via
the Court's CM/ECF System**

*Attorneys for Plaintiff
Jack B. Noyer*

Courtney W. Redman, Esq.
LAW OFFICES OF COURTNEY W. REDMAN, ESQ.
1055 7th Street, 33rd Floor
Los Angeles, CA 90017

Tel: (213) 863-4747
Email: courtney@cwredmanlaw.com

☒    **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on June 28, 2021.

_____
Laurie Hlista
(Type or Print Name)

_____
(Signature of Declarant)

ANGLIN FLEWELLING & RASMUSSEN LLP

94000/HR2359/02577823-1

CASE NO. _____
CERTIFICATE OF SERVICE